CITY OF SEVEN HILLS ET AL.;
SLIVKA, APPELLEE; CITY OF NORTH
OLMSTED, APPELLANT, *v.* CITY OF
CLEVELAND.

(Nos. 53565 and 53566—Decided
May 2, 1988.)

*James M. Wilsman* and *Kim M. Hastings,* for appellee William J. Slivka.

*Michael R. Gareau,* director of law, for appellant.

DYKE, J. Between 1975 and 1981, almost all of the suburban cities and villages in the metropolitan Cleveland area were involved as plaintiffs in two lawsuits against the city of Cleveland. In these suits, the plaintiff suburbs sought to divest control of the Cleveland water system from the city of Cleveland.

On November 8, 1978, the trial court entered judgment in favor of the plaintiff suburbs. That decision was appealed to this court, and on September 15, 1980, we reversed the trial court's decision in part, affirmed it in part, and remanded the case for further proceedings.[1]

On June 30, 1981, the parties to the suits entered into a settlement agreement. The last paragraph of this agreement provided:

"This Court reserves jurisdiction of this matter solely for the purpose of considering any motions or joint motions which might be filed relating to payment by plaintiffs or by surburan water users of plaintiffs' attorney's fees and expenses of litigation, provided that any such relief shall be at no cost to defendant City of Cleveland."

On April 7, 1986, plaintiffs' trial

---

[1] See *Seven Hills* v. *Cleveland* (1980), 1 Ohio App. 3d 84, 1 OBR 386, 439 N.E. 2d 895.

attorney filed a document with the trial court, captioned "application by William J. Slivka as counsel for plaintiffs for allowance of compensation." In this document, the appellee William Slivka requested that the court order his fees to be paid.

The court subsequently held hearings on the appellee's request, and on March 10, 1987, the court entered judgment in favor of both the appellee and the Cuyahoga County Mayors and City Managers Association against the appellant city of North Olmsted in the amount of $14,641.22.

The appellant now appeals the trial court's judgment and assigns three errors to it.

The appellant's first assignment of error is:

"The trial court's inclusion within a journal entry of a provision reserving its jurisdiction in order to consider motions relating to the suburb-plaintiff's payment of attorney fees to its counsel, William Slivka, is contrary to law."

Under this assignment of error, the appellant argues that the trial court had no jurisdiction to entertain the appellee's request for attorney's fees regardless of the journal entry clause that purportedly reserved jurisdiction.

Section 4(B), Article IV of the Ohio Constitution provides:

"The courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters and such powers of review of proceedings of administrative officers and agencies as may be provided by law."

In interpreting this constitutional provision, the Supreme Court has stated:

"It is clear * * * that the power to define the jurisdiction of the courts of common pleas rests in the General Assembly and that such courts may exercise only such jurisdiction as is expressly granted to them by the legislature. *Cincinnati* v. *Bossert Machine Co.* (1968), 16 Ohio St. 2d 76, certiorari denied, 394 U.S. 998; *Wolfrum* v. *Wolfrum* (1965), 2 Ohio St. 2d 237; *Jacobsen* v. *Jacobsen* (1956), 164 Ohio St. 413; *State, ex rel. Black,* v. *White* (1936), 132 Ohio St. 58; *Ellis* v. *Urner* (1932), 125 Ohio St. 246; *Hess* v. *Devou* (1925), 112 Ohio St. 1; and *Miller* v. *Eagle* (1917), 96 Ohio St. 106. By this, we do not imply that a court of common pleas is powerless to issue those writs or take such action as is necessary to aid or to protect its statutorily granted jurisdiction. See *State, ex rel. Miller,* v. *Keefe* [(1958), 168 Ohio St. 234]." *Seventh Urban, Inc.* v. *Univ. Circle Property Dev., Inc.* (1981), 67 Ohio St. 2d 19, 22-23, 21 O.O. 3d 12, 14, 423 N.E. 2d 1070, 1073.

In this case, the complaints filed on behalf of the plaintiffs naturally set forth no causes of action by the appellee against those plaintiffs for attorney fees. Consequently, the appellee was not a party to the action. Further, there exists no statute or Civil Rule which permits a court to retain jurisdiction after its issuance of final judgment under circumstances such as these. Accordingly, the court had no jurisdiction and could not reserve jurisdiction under these facts. Compare *Federman* v. *Steffen* (May 15, 1980), Cuyahoga App. No. 41295, unreported; *Shaefer* v. *Shaefer* (June 6, 1974), Cuyahoga App. No. 33298, unreported. Because of this, appellant's first assignment of error is well-taken and the trial court's judgment in favor of the appellee must be reversed.

Appellant's second assignment of error is:

"The trial court erred in finding that the city of North Olmsted was required as a matter of law to pay a pro rata share of applicant William Slivka's claim for attorney fees."

In the trial court, the appellee argued that since the appellant was a member of the Cuyahoga County

Mayors and City Managers Association ("association"), the association had contracted for legal services with the appellee, and the appellant's city council had authorized some payments for appellee's services, the appellant's city council had ratified the contract between the appellee and the association. Because of these facts, the appellee claimed that the appellant municipality should be liable for appellee's fees. The appellee argued as an alternative theory that the appellant should be held liable for his fees under the "common fund doctrine" because his legal services had saved the appellant and its citizens significant amounts of money. In its journal entry of March 10, 1987, the trial court held that the appellant city of North Olmsted, by duly enacted ordinance, had authorized the association to employ such legal assistance as it deemed necessary. The court then issued judgment in favor of appellee. The appellant municipality argues that the trial court erred in granting judgment in favor of the appellee because there existed no contract between the appellant and the appellee.

No evidence was presented below suggesting either that the mayor or law director of the appellant municipality had entered into a contract on behalf of the appellant with the appellee, or that the appellant's city council had passed an ordinance specifically permitting the executive branch to enter into such a contract. In its judgment, the court seemed to adopt the appellee's theory that the appellant's city council had ratified the contract entered into by the appellee and the association. However, our review of the area of municipal law inexorably leads us to the conclusion that under circumstances such as these a municipality cannot be held liable through a theory of ratification to a party who has performed services for that municipality.

It is established Ohio precedent that:

"A municipal corporation is without power to enter into contracts which delegate or bargain away its legislative or governmental powers, or which disable it from performing its public functions and duties." *State, ex rel. Gordon,* v. *Taylor* (1948), 149 Ohio St. 427, 37 O.O. 112, 79 N.E. 2d 127, paragraph one of the syllabus.

Section 4, Article VIII of the North Olmsted City Charter provides:

"No money shall be drawn from the treasury nor shall an obligation for expenditure be incurred except in accordance with appropriations made by Council. Claims shall be approved in writing by the head or acting head of the department for which the obligation was incurred. The Council may by ordinance provide for additional regulations or controls with respect to the payment of claims."

Pursuant to the above, only the appellant's council can appropriate funds from the municipal treasury. Since appellant's council did not appropriate funds for $11,852.79 of the appellee's claimed fees, and since the appellant was without power to delegate or bargain away its power of appropriation, the appellant cannot be held liable for any amounts over and above those which it has appropriated for the appellee's fees.

In addition, Section 6, Article IV of the North Olmsted City Charter provides that council shall have the power to fix the compensation of each employee of the city. In an interpretation of G.C. 4214, which was the predecessor of R.C. 731.08[2] and which

---

[2] The texts of both G.C. 4214 and R.C. 731.08 are virtually identical. The latter provides:

"Except as otherwise provided in Title VII of the Revised Code, the legislative authority of a city, by ordinance or resolu-

is analogous to Section 6, Article IV of the North Olmsted City Charter, it has been held that if an attorney has been retained to perform legal services by a municipality, only city council can fix the compensation of that attorney, and if council has refused to fix an amount of compensation, that attorney cannot recover against the city. *Petermann* v. *Tepe* (1949), 87 Ohio App. 487, 492, 43 O.O. 121, 124, 93 N.E. 2d 328, 331. As has been discussed, appellant's city council never authorized a contract between the appellee and the appellant. Accordingly, the city council never fixed compensation for the appellee. Pursuant to the above, it follows that the appellee cannot recover his fees from the appellant.

Another reason the appellee may not recover his fees is because no certificate of expenditure was attached to a contract for his services. R.C. 5705.41 provides:

"No subdivision or taxing unit shall:

"* * *

"(D) * * * make any contract or give any order involving the expenditure of money unless there is at-tached thereto a certificate of the fiscal officer of the subdivision that the amount required to meet the obligation or, in the case of a continuing contract to be performed in whole or in part in an ensuing fiscal year, the amount required to meet the obligation in the fiscal year in which the contract is made, has been lawfully appropriated for such purpose and is in the treasury or in process of collection to the credit of an appropriate fund free from any previous encumbrances. This certificate need be signed only by the subdivision's fiscal officer. Every such contract made without such a certificate shall be void, and no warrant shall be issued in payment of any amount due thereon. * * *"

In interpreting a predecessor statute to the above,[3] the Supreme Court held:

"Nor will such contract impose on the corporation a valid obligation * * * unless the auditor, or clerk, of the corporation, as the case may be, 'shall first certify that the money required for' that purpose 'is in the treasury to the credit of the fund from which it is

---

tion, shall determine the number of officers, clerks, and employees in each department of the city government, and shall fix, by ordinance or resolution, their respective salaries and compensation, and the amount of bond to be given for each officer, clerk, or employee in each department of the government, if any is required. Such bond shall be made by such officer, clerk, or employee, with surety subject to the approval of the mayor."

[3] Section 2702, Revised Statutes. This section provided:

"No contract, agreement, or other obligation involving the expenditure of money shall be entered into, nor shall any ordinance, resolution· or order for the appropriation or expenditure of money be passed by the council or by any board or of-ficer of a municipal corporation, unless the auditor of the corporation — and if there is no auditor, the clerk thereof — shall first certify that the money required for the contract, agreement, or other obligation, or to pay the appropriation or expenditure, is in the treasury, to the credit of the fund from which it is to be drawn, and not appropriated for any other purpose, which certificate shall be filed, and immediately recorded; and the sums so certified shall not thereafter be considered unappropriated, until the corporation is discharged from the contract, agreement, or obligation, or so long as the ordinance, resolution, or order is in force; and all contracts, agreements, or other obligations, and all ordinances, resolutions, and orders entered into or passed contrary to the provisions of this section, shall be void."

to be drawn,' etc., as required by section 2702, Revised Statutes.

"Where either of such requirements has been omitted the municipality will not by the acts of its officers be estopped to set up such omission as a defense to an action brought against it on such contract." *Lancaster* v. *Miller* (1898), 58 Ohio St. 558, paragraphs two and three of the syllabus.

On April 6, 1976, the appellant's city council passed an ordinance which authorized the payment of $2,788.88 to the association for the purpose of paying expenses involved in the litigation against the city of Cleveland. It is undisputed that the Clerk of the city of North Olmsted prepared a certificate of expenditure for this appropriation, and that these funds were paid to the association.

On March 20, 1979, appellant's council passed an ordinance for another payment of $2,788.83 to the association for legal expenses. However, no evidence was submitted below which demonstrated that a certificate of expenditure was attached to this ordinance. Further, these funds were not paid to the appellee. Since no certificate of expenditure was attached to the appellant's March 20, 1979 appropriation, under R.C. 5705.41(D), any contract the appellee arguably had with the appellant municipality is void. And, under *Lancaster, supra,* the appellee cannot recover these funds from the appellant. Accord *Findlay* v. *Pendleton* (1900), 62 Ohio St. 80, 56 N.E. 649; *State, ex rel McGraw,* v. *Smith* (1935), 129 Ohio St. 246, 2 O.O. 116, 194 N.E. 872; *Rua* v. *Shillman* (1985), 28 Ohio App. 3d 63, 28 OBR 104, 502 N.E. 2d 220.

In addition, since the appellant's council issued no ordinances authorizing payment for the remainder of the appellee's fees, no certificate of expenditure could have been prepared in regard to these fees. Consequently, the appellee cannot recover from the appellant $11,852.79 of his fees which were not appropriated by the appellant.

The above analyses show that the appellee could not properly recover from the appellant because the appellant's city council did not appropriate funds for most of the appellee's fees, because the appellant's council did not specifically set an amount to be paid as appellee's fees and, finally, because no certificates of expenditure were prepared in regard to the appellee's claimed fees. Regardless of whether the appellant municipality could have ratified or authorized a contract between it and the appellee, the above-discussed factors would still prevent the appellee's recovery of his fees from the appellant. Consequently, under the facts of this case the appellant's ratification theory was not a viable theory of recovery.

The appellee's second argument as to why the appellant should be liable for the appellee's fees involves the common fund doctrine. Under this doctrine, an attorney who has represented a class in a class action or a taxpayer's suit may recover his fees from the fund that was created by his efforts. In discussing this doctrine, the court in *Smith* v. *Kroeger* (1941), 138 Ohio St. 508, 21 O.O. 386, 37 N.E. 2d 45, noted:

" 'The general rule is that a court of equity, or a court in the exercise of equitable jurisdiction, will in its discretion order an allowance of counsel fees, or, as it is sometimes said, allow costs as between solicitor and client, and sometimes directly to the attorney, who, at his own expense, has maintained a successful suit for the preservation, protection, and increase of a common fund or common property, or who has created at his own expense, or brought into a court a fund in which others may share with him.' " *Id.* at

514-515, 21 O.O. at 389, 37 N.E. 2d at 48.

Since the *Kroeger* case in 1941, several Ohio courts have addressed issues pertinent to the one at bar. In 1959, the Supreme Court held in *Grandle* v. *Rhodes* (1959), 169 Ohio St. 77, 8 O.O. 2d 40, 157 N.E. 2d 336, that if the fund from which attorney fees were to be paid was a general public fund, then they could not be awarded to a plaintiff's attorney under the common fund doctrine. In *Friedman* v. *Cuyahoga Cty.* (Nov. 1, 1973), Cuyahoga App. No. 32587, unreported, this court held that if the outcome of the case did not result in the creation of a common fund, the case would not fall within the purview of the common fund doctrine, and attorney fees would not be allowed. Finally, in *Akron-Canton Chapter, American Subcontractor Assn.* v. *Dept. of Adm. Services* (1984), 21 Ohio App. 3d 6, 21 OBR 7, 486 N.E. 2d 116, it was held that an attorney's efforts which had caused a savings to an administrative agency did not create a common fund.

In the instant case, since the appellee's efforts did not create a common fund, but instead only saved funds for the appellant and its citizens, and since payment of the appellee's fees would come from the general fund of the appellant municipality, the common fund doctrine is not applicable. Accordingly, the appellee's reliance on this theory of recovery was misplaced, and the appellant's arguments in this regard are well-taken.

As the above discussions show, neither of the appellee's theories of recovery was viable. Furthermore, it is established Ohio precedent that "[a] municipal corporation cannot generally be held liable for quasi- or implied contracts or for claims based upon the theory of *quantum meruit. Eastlake* v. *Davis* (1952), 94 Ohio App. 71, 74 * * *." *Cuyahoga Cty. Hosp.* v. *Cleveland* (1984), 15 Ohio App. 3d 70, 72, 15 OBR 99, 101, 472 N.E. 2d 757, 759. Pursuant to this precedent, the appellee cannot recover from the appellant on the basis of quasi-contract or *quantum meruit.* Therefore, even though it is clear that the appellee performed services on behalf of the appellant and that the appellant benefitted therefrom, it is equally clear that there exists no viable theory under which the appellee could have properly recovered his fees from the appellant.

In *Kimbrell* v. *Seven Mile* (1984), 13 Ohio App. 3d 443, 13 OBR 532, 469 N.E. 2d 954, the Court of Appeals for Butler County discussed the enforceability of contracts entered into by municipalities:

"It has long been the law of Ohio that persons dealing with municipal corporations are charged with notice of all statutory limitations on the power of such corporations and their agents, and must, at their peril, ascertain whether all necessary statutory formalities have been met. See *Welch* v. *Lima Stone Co.* v. *Columbus Grove* (1944), 73 Ohio App. 557 [29 O.O. 187]. 'Those who deal with the agents of a municipality must assume the risk that all necessary steps have been taken requisite to a legal contract.' *Id.* at 563. * * *" *Kimbrell, surpa,* at 445, 13 OBR at 535, 469 N.E. 2d at 957-958.

In addition, the Supreme Court has stated:

"An occasional hardship may accrue to one who negligently fails to ascertain the authority vested in public agencies with whom he deals. In such instances, the loss should be ascribed to its true cause, the want of vigilance on the part of the sufferer, and statutes designed to protect the public should not be annulled for his benefit. * * *" *McCloud & Geigle* v. *Columbus* (1896), 54 Ohio St. 439, 453, 44 N.E. 95, 97; see, also, *Rua* v. *Shillman* (1985), 28 Ohio App. 3d 63, 64-65, 28

OBR 104, 105, 502 N.E. 2d 220, 221.

Because of the above, we hold that the trial court erred in granting judgment in favor of the appellee. Appellant's second assignment of error is well-taken.

The appellant's third assignment of error is:

"The trial court erred in entering judgment in favor of the Cuyahoga County Mayor's [sic] and City Manager's [sic] Association when the association was not a party to the litigation, the trial court reserved no jurisdiction as to it, and the association did not seek judgment against the city of North Olmsted."

The record demonstrates that the Cuyahoga County Mayors and City Managers Association was not a party to this action. Because of this fact, the trial court erred in granting judgment in favor of this entity. Appellant's third assignment of error is well-taken.

*Judgment reversed.*

PATTON, P.J., and MATIA, J., concur.