OPINION
Petitioner-appellant, Ed Bower, appeals the decision of the Madison County Court of Common Pleas finding that respondents-appellees, the village of Mt. Sterling ("Village") and Village officials,[1] did not unlawfully pay certain legal fees.
The facts underlying the action are not disputed. On December 22, 1997, the Village Council passed Ordinance 1997-44 adopting the 1998 Village budget and appropriations. Included was an $8,000 Legal Services Appropriation for a solicitor. On January 12, 1998, the Village contracted with attorney Stephen L. Hume to act as solicitor for one year. Hume was to be compensated at $500 per month, plus $100 for attendance at each of the two monthly Village Council meetings and $65 per hour for additional work. Even had Hume not undertaken any additional work on behalf of the Village, he would be paid $8,400 for his services in the year. As of September 10, 1998, $1,875 remained in the Legal Services Appropriation account.
On August 10, 1998, the Village Council passed Ordinance 1998-24, authorizing Mayor Meade to hire special council to investigate specific matters on behalf of the Village. On September 11, 1998, attorney Charles L. Bluestone of Carlile, Patchen Murphy, L.L.P. (hereafter Carlile Patchen), sent an "engagement letter" to the Village Administrator, Jeffrey A. Jewel, acknowledging that Bluestone had been selected by Mayor Meade to serve as special counsel and setting forth a compensation schedule. The engagement letter stated that, if the proposed agreement was acceptable, the letter should be signed and returned to Carlile Patchen. The letter was not signed and returned at that time.
On September 14, 1998, Mayor Meade introduced Bluestone at the Village Council meeting, announcing that Carlile Patchen had been retained as special counsel. On October 26, 1998, the Village Council passed Ordinance 1998-36, transferring $5,000 from the Mayor's Capital Outlay Appropriation to the Legal Services Appropriation. That same day, Carlile Patchen billed the Village $1,761.50 for services rendered up to and including September 30, 1998. On October 28, 1998, Mayor Meade signed the engagement letter and returned it to Carlile Patchen, thereby making effective the contract between the Village and Carlile Patchen.
That same day, Village Clerk-Treasurer, Virginia B. Lehman, issued a certificate stating that there was $5,000 available to meet the contractual obligations with Bluestone and Carlile Patchen "at the time of the making of such contract or order and at the time of the execution of this certificate." On October 30, 1998, a purchase order for the payment of $1,761.50 to Carlile Patchen was issued by the Village, certified by Lehman, examined by Jewel, and duly authorized by the Village Council. On December 16, 1998, a warrant issued to Carlile Patchen in the amount of $1,761.50.
During this course of events, petitioner had instituted legal proceedings. On September 24, 1998, petitioner filed in the trial court a petition for a writ of mandamus, a temporary restraining order, a preliminary injunction, and a permanent injunction to prevent the Village Council from paying Bluestone for legal services. Petitioner alleged that Village officials had violated open meetings provisions when authorizing Mayor Meade to hire counsel and had failed to follow certain statutory requirements. Petitioner alleged that any contract between the Village and Carlile Patchen was void. Motions and briefs were filed regarding injunctive relief. On September 30, 1998, the trial court held a hearing. On October 28, 1998, respondents filed their answer to the petition in mandamus.
On November 4, 1998, the trial court filed its decision denying injunctive relief. The trial court found that petitioner could not prevail on the open meetings claim. The trial court further found that the appropriation to pay Bluestone and Carlile Patchen had not been properly certified, finding that "Bluestone has no authority to investigate in the absence of a contract; and the Village can not [sic] compensate him for services rendered in the absence of a contract or under a void contract." The trial court found that petitioner had an adequate remedy at law, vitiating any need for injunctive relief.
The case proceeded on its merits. On December 22, 1998, the trial court gave petitioner ten days in which to request assignment. When petitioner failed to do so, the trial court dismissed the cause without prejudice on January 4, 1999. On January 7, 1999, petitioner filed a motion to reinstate the case, which was granted on January 20, 1999. Both parties filed briefs, and a bench trial was held on June 28, 1999.
On September 29, 1999, the trial court filed its decision and entry finding that petitioner was not entitled to the requested mandamus. The trial court found that, although the contract between the Village and Carlile Patchen had not been properly certified when Bluestone was retained as special counsel and began his investigation, the contract and appropriation to pay Bluestone had been properly certified at a later date. The trial court ruled that the certification cured all prior statutory defects, entitling the Village to pay Bluestone for his services. The Village officials were not personally liable to repay to the Village the monies paid to Bluestone and Carlile Patchen. Petitioner appeals, raising four assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT'S DECISION AND ENTRY, DATED SEPTEMBER 30, 1999, ("THE ENTRY") ERRONEOUSLY HELD THAT THE "THEN AND NOW CERTIFICATE" UNDER O.R.C. § 5705.41(D)(1) ISSUED BY THE VILLAGE OF MT. STERLING (THE "VILLAGE") BACKDATES THE CONTRACT FROM OCTOBER 28, 1998, (THE DATE MR. BLUESTONE'S ENGAGEMENT LETTER WAS SIGNED) TO SEPTEMBER 11, 1998, AND CURES A VARIETY OF STATUTORY DEFECTS IN THE CONTRACT.
Assignment of Error No. 2:
 THE TRIAL COURT'S ENTRY ERRONEOUSLY HELD THAT THE "THEN AND NOW CERTIFICATE" UNDER O.R.C. § 5705.41(D)(1), WAS PROPERLY ISSUED BY THE VILLAGE.
 In his first two assignments of error, petitioner contends that the trial court erred in finding that the appropriation to pay the Carlile Patchen legal bill was properly certified. Petitioner argues that, even if the certificate was proper, it did not cure all statutory defects and backdate the contract to a time when it had yet to be signed.
Municipal corporations, such as the Village, are creations of statute, and their actions must conform to the governing statutes. Those who deal with such government units "are charged with notice of all statutory limitations on the power of such [units] and their agents, and must, at their peril, ascertain whether all necessary statutory formalities have been met." Kimbrell v. SevenMile (1984), 13 Ohio App.3d 443, 445. In the case of making a contract with a municipality, "[t]hose who deal with the agents of a municipality must assume the risk that all necessary steps have been taken requisite to a legal contract." Id. It should be remembered that
 [a]n occasional hardship may accrue to one who negligently fails to ascertain the authority vested in public agencies with whom he deals. In such instances, the loss should be ascribed to its true cause, the want of vigilance on the part of the sufferer, and statutes designed to protect the public should not be annulled for his benefit."
 Seven Hills v. Cleveland (1988), 47 Ohio App.3d 159, 164, quoting McCloud and Geigle v. Columbus (1896), 54 Ohio St. 439, 453.
R.C. 5705.41 provides:
No subdivision or taxing unit shall:
* * *
 (D)(1) Except as otherwise provided in division (D)(2) of this section, make any contract or give any order involving the expenditure of money unless there is attached thereto a certificate of the fiscal officer of the subdivision that the amount required to meet the obligation * * * has been lawfully appropriated for such purpose and is in the treasury or in process of collection to the credit of an appropriate fund free from any previous encumbrances. This certificate need be signed only by the subdivision's fiscal officer. Every such contract made without such a certificate shall be void, and no warrant shall be issued in payment of any amount due thereon. If no certificate is furnished as required, upon receipt by the taxing authority of the subdivision or taxing unit of a certificate of the fiscal officer stating that there was at the time of the making of such contract or order and at the time of the execution of such certificate a sufficient sum appropriated for the purpose of such contract and in the treasury or in process of collection to the credit of an appropriate fund free from any previous encumbrances, such taxing authority may authorize the drawing of a warrant in payment of amounts due upon such contract, but such resolution or ordinance shall be passed within thirty days from the receipt of such certificate[.]
 A valid contract may be made and paid pursuant to R.C. 5705.41(D)-(1) by two methods, and strict compliance with the statute is mandatory. Hawley v. Toledo (1934), 47 Ohio App. 246, 247. By the first, and preferred, method, the fiscal officer must attach to the contract a certificate that sufficient funds to meet the contractual obligations are either in the treasury or in the process of collection. This certificate is issued and attached at the time that the contract is executed.
By the second, less preferred, method the fiscal officer must still attach a certificate to the contract or order to pay money on the contract, but this certificate is attached after the contract's execution. Under this scheme, the certificate demonstrates that at the time that the contract was made and the certificate was issued, there was in the treasury sufficient funds to pay the contract or such funds were in the process of collection. Within thirty days of the receipt of this certificate, the governing authority of the municipality must pass a resolution or ordinance authorizing the drawing of a warrant to pay the contract. R.C. 5705.41(D)(1). R.C. 5705.41(D)(1) makes clear that the certificate issued under this second method relates back only to the time that the contract was executed.[2]
Without proper certification, any contract by the government unit will be void. R.C. 5705.41(D)(1); Seven Hills,47 Ohio App.3d at 163, citing Lancaster v. Miller (1898), 58 Ohio St. 558, paragraphs two and three of the syllabus; NN Commercial Waste,Inc. v. West Carrollton (Mar. 15, 1995), Montgomery App. No. CA 14671, unreported. There can be no recovery upon the void contract. Seven Hills, 47 Ohio App.3d at 163. Even where one has performed some service on behalf of a government unit without a valid contract in effect, "[a] municipal corporation cannot generally be held liable for quasi- or implied contracts or for claims based upon the theory of quantum meruit." Indian Hill v.Atkin (1950), 153 Ohio St. 562, 569-570; Seven Hills,47 Ohio App.3d at 164. Likewise, an oral agreement is "an ineffective method" of contracting with a municipal government because "such an arrangement would lack validity." State v. Hooker (Sept. 30, 1987), Lake App. No. 12-103, unreported. "Verbal expressions of approval do not suffice. * * * Fiscal officer certification is required. R.C. 5705.41(D)." Id.
On October 26, 1998, the Village Council appropriated $5,000 to the Legal Services Appropriation to pay for Bluestone's legal work. The record demonstrates that the contract between the Village and Carlile Patchen was executed when Mayor Meade signed the engagement letter on October 28, 1998. That same day, Clerk-Treasurer Lehman issued a certificate stating that there were sufficient funds to pay for the appropriation. As of October 28, 1998, there was a valid contract between the Village and Carlile Patchen. However, Carlile Patchen billed the Village for legal work performed prior to September 30, 1998.
Although it is true that Bluestone sent the engagement letter on September 11, 1998, and that Mayor Meade introduced Bluestone as special counsel at the September 14, 1998 Village Council meeting, the engagement letter had not been signed on behalf of the Village. As a result, there were only verbal expressions that Bluestone had been retained as special counsel. Such verbal expressions are ineffective, Hooker, and implied contract andquantum meruit are unavailable as a basis to recover for the services performed as the services were done without a valid contract in effect. Indian Hill, 153 Ohio St. at 569-570.
The trial court correctly held that the fiscal officer's certificate issued on October 28, 1998 validated the contract between the Village and Carlile Patchen. The trial court incorrectly found that this certificate and the contract related back to September 11, 1998, the date of the engagement letter. Rather, the contract and the Village's commensurate contractual obligation to pay were effective as of October 28, 1998. No recovery can be had by Bluestone and Carlile Patchen for work done prior to that date. The first assignment of error is sustained, and the second assignment of error is overruled.
Assignment of Error No. 3:
 AS A RESULT OF THE ABOVE DETERMINATIONS, THE TRIAL COURT'S ENTRY ERRONEOUSLY HELD THAT THE VILLAGE OFFICIALS RESPONSIBLE FOR APPROVING AND MAKING THE PAYMENT TO CARLILE, PATCHEN MURPHY, LLP IN ISSUE IN THIS CASE ARE NOT PERSONALLY LIABLE UNDER O.R.C. § 5705.45 FOR A WRONGFUL PAYMENT FROM PUBLIC FUNDS.
 In his third assignment of error, appellant contends that the trial court erred when it found that respondents were not personally liable for unlawfully authorizing payment to Carlile Patchen. Appellant argues that R.C. 5705.45 requires that they reimburse the Village for the funds paid to Carlile Patchen.
R.C. 4507.45 provides:
 Any officer, employee, or other person who issues any order contrary to section 5705.41 of the Revised Code, or who expends or authorizes the expenditure of any public funds, or who authorizes or executes any contract contrary to section 5705.01 to 5705.47 of the Revised Code, unless payments thereon are subsequently ordered as provided in Section 5705.41 of the Revised Code, or expends or authorizes the expenditure of any public funds on any such void contract, obligation, or order, unless subsequently approved as provided in that section, or issues a certificate under the provisions thereof which contains any false statements, shall be liable to the political subdivision for the full amount paid from the funds of the subdivision on any such order, contract, or obligation. Such officer, employee, or other person shall be jointly and severally liable in person and upon any official bond that he has given to such subdivision, to the extent of any payments of such void claim.
 This court has found no case discussing whether the liability imposed by this provision is mandatory or if it is left to the trial court's discretion. 1998 Ohio Atty.Gen.Ops. 98-002 does examine this issue in the context of a board of education. That opinion states that "[s]hould a board of education fail to comply with any of the requirements of R.C. 5705.01-.47 in making an expenditure that exceeds the spending limitation imposed by R.C. 3315.062(A), the board members may be subject to liability for such expenditure in accordance with R.C. 5705.45." (Emphasis added.)
The trial court found that the respondents were not liable for unlawful expenditures, basing its decision upon its determination that the expenditures were properly made. As discussed above, the trial court erred in finding that the expenditures were made in accordance with R.C. 5705.41(D)(1). In light of the language of R.C. 5705.45 and 1998 Ohio Atty.Gen.Ops. 98-002, we remand this issue to the trial court to reconsider whether respondents are liable for improperly authorizing the payment to Carlile Patchen.
The trial court's decision on this issue is vacated and the cause remanded for further proceedings. The third assignment of error is sustained.
Assignment of Error No. 4:
 THE TRIAL COURT'S ENTRY ERRONEOUSLY FAILED TO RULE ON WHETHER THE APPELLANT IS ENTITLED TO ATTORNEYS FEES UNDER O.R.C. § 5705.45.
 In his final assignment of error, petitioner contends that the trial court erred by not awarding him attorney fees as a result of his instituting his taxpayer action to recover money on behalf of the Village. The trial court did not rule upon this issue. We assume that the trial court overruled petitioner's request for attorney fees.
Pursuant to R.C. 733.59[3] and 733.61,[4] if a taxpayer brings suit to enjoin the misapplication of municipal funds after the municipal solicitor has refused to bring the action upon request, the taxpayer may recover attorney fees where there is a public fund by which to pay the fees. State ex rel.Scott v. Masterson (1962), 173 Ohio St. 402, 406-407; State exrel. Elyria v. Trubbey (1983), 24 Ohio App.3d 44, 46. Attorney fees may be awarded only if the taxpayer suit is successful and this success bestows a benefit upon the public. Billington v. Cotner
(1974), 37 Ohio St.2d 17, 19. The allowance of attorney fees and the amount of any award are matters left to the trial court's discretion.Hubbard ex rel. Creed v. Sauline (1996), 74 Ohio St.3d 402, 407-408.
It is clear that when the trial court found petitioner's suit unsuccessful, it denied his request for attorney fees. Because its decision regarding the lawfulness of the appropriation was in error, the trial court must reconsider whether petitioner is entitled to attorney fees. The fourth assignment of error is sustained.
Judgment affirmed in part, reversed in part, vacated in part, and remanded for further proceedings consistent with this opinion.
POWELL, P.J., and VALEN, J., concur.
[1] The officials are Glen E. Meade, Mayor, Gisela Williams, Council President, and Village Council members Robert Hasson, Pam Chambers, Charles Neff, Diane Bower, and Bonnie Bricker. Respondents-appellees will be collectively referred to as "respondents." When referred to individually, respondents will be referred to by their last names. As two of the parties are both named Bower, Ed Bower will be referred to as "petitioner."
[2] The statute reads: "At the time of the making of such contract or order and at the time of execution of such certificate * * *."
[3] R.C. 733.59 provides, in part:
 If the village solicitor or city director of law fails, upon the written request of any taxpayer of the municipal corporation, to make any application provided for in sections 733.56 to 733.58 of the Revised Code, the taxpayer may institute suit in his own name, on behalf of the municipal corporation.
[4] R.C. 733.61 provides:
 If the court hearing a case under section 733.59 of the Revised Code is satisfied that the taxpayer has good cause to believe that his allegations were well founded, or if they are sufficient in law, it shall make such order as the equity of the case demands. In such case the taxpayer shall be allowed his costs, and, if judgment is finally ordered in his favor, he may be allowed, as part of the costs, a reasonable compensation for his attorney.