OPINION
{¶ 1} On August 25, 2003, appellant, Federal National Mortgage Association, filed a complaint against Chad Webb and others, including appellee herein, Farm Credit Services of Mid-America, ACA, for money due and owing and foreclosure on property located in Marengo, Ohio. Appellant was the assignee of a mortgage which had been executed by Washington Mutual Bank, FA.
 {¶ 2} On February 13, 2004, appellee filed a motion for leave to file a cross-claim, claiming it had the first and best lien on the subject property. The trial court granted leave on February 20, 2004.
 {¶ 3} On August 30, 2004, the trial court issued an agreed entry and order wherein the parties agreed to submit the issue of lien priority to the trial court pursuant to the set briefing schedule and oral hearing. The parties filed a joint stipulation of fact on September 10, 2004.
 {¶ 4} On September 30, 2004, appellee filed a motion for summary judgment. By entry filed June 1, 2005, the trial court granted summary judgment to appellee, finding it had priority because it had filed a certificate of judgment before appellant's mortgage interest. The trial court found appellee's certificate of judgment was properly perfected, appellant was not a bona fide mortgagee and the doctrine of equitable subrogation did not apply. On July 12, 2005, the trial court entered a final judgment entry with respect to priority.
 {¶ 5} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 6} "THE TRIAL COURT ERRED IN HOLDING THAT APPELLEE'S CERTIFICATE OF JUDGMENT WAS PROPERLY PERFECTED AND THAT IT CREATED A LIEN THAT ATTACHED TO THE SUBJECT PROPERTY."
 II {¶ 7} "THE TRIAL COURT ERRED IN NOT FINDING THAT APPELLANT IS A BONA FIDE MORTGAGEE FOR VALUE THAT OBTAINED ITS INTEREST FREE OF APPELLEE'S ALLEGED INTEREST."
 III {¶ 8} "THE TRIAL COURT ERRED IN HOLDING THAT APPELLANT WAS NOT ENTITLED TO PRIORITY IN THE AMOUNT OF THE PRIOR LIEN IT SATISFIED BY APPLICATION OF THE DOCTRINE OF EQUITABLE SUBROGATION."
 {¶ 9} This matter came before the trial court on a motion for summary judgment with a joint stipulation of facts. The parties agreed to submit the issue of lien priority to the trial court after oral hearing. See, Agreed Entry and Order filed August 30, 2004.
 {¶ 10} Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in State ex rel. Zimmerman v. Tompkins,75 Ohio St.3d 447, 448, 1996-Ohio-211:
 {¶ 11} "Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex.rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511,628 N.E.2d 1377, 1379, citing Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274."
 {¶ 12} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35.
 I {¶ 13} Appellant claims the trial court erred in determining the certificate of judgment was property perfected and attached to the subject property. We disagree.
 {¶ 14} In determining the issue of priority, the trial court stated "the crux of the issue of priority seems quite clear as surrounding the identity of Evelyn McNickle f/k/a Evelyn Knece, and whether her identity can be linked, from the public records, to Farm Credit's judgment lien." See, Entry filed June 1, 2005. In the same entry, the trial court determined appellee had priority, finding the following:
 {¶ 15} "At the time of that title search, the records in Morrow County clearly indicated that Evelyn McNickle and Evelyn Knece were the same person, most especially those records in the office of the Morrow County Recorder. This information was readily available to the title examiner who should have detected the names of Evelyn Knece and Evelyn McNickle to be one and the same person, despite where the initial `M' may be placed, if placed at all, on those records."
 {¶ 16} We concur with the trial court's analysis based upon the following stipulations:
 {¶ 17} "5. On April 24, 1998, the mortgage to Fairbank Mortgage Bankers Corp. from Evelyn M. McNickle was duly recorded in the Morrow County Recorder's Office in the Mortgage Record Volume 349 page 830 of the Morrow County Records.
 {¶ 18} "6. On July 30, 1998, the mortgage of Evelyn M. McNickle to Fairbank Mortgage Bankers Corp. referred to in the previous paragraph was re-recorded and the designation of the Borrower on this mortgage was changed so that it then read `Evelyn M. McNickle, unmarried, fka Evelyn Knece', and this mortgage was recorded in the public records of Morrow County at Volume 355 page 215.
 {¶ 19} "7. On May 17, 1999, the Washington County Common Pleas Court rendered a Judgment against `M Evelyn McNickle, Charles L. Webb, and Mary L. Webb' on behalf of Farm Credit Services of Mid-America, ACA (the Defendant and Cross Claimant herein) in the original amount of $114,807.65 plus interest.
 {¶ 20} "8. On July 20, 1999, Farm Credit Services of Mid-America, ACA filed a Certificate of Judgment in the Morrow County Common Pleas Court listing `M Evelyn McNickle, Charles L. Webb, and Mary L Webb' as judgment debtors. At that time, title to the Property was held in the name of Evelyn Knece.
 {¶ 21} "10. On February 25, 2000, Evelyn Knece executed a Deed listing Evelyn Knece as Grantor and Evelyn McNickle as Grantee, for the Property, and this Deed was recorded in Deed Book 358 page 257 of the Morrow County Records on February 25, 2000.
 {¶ 22} "13. On January 14, 2003, the Defendant, Chad Webb, entered into a loan transaction with Washington Mutual Bank, FA whereby Chad Webb borrowed the sum of $62,400.00 in order to purchase the Property. In return, Chad Webb executed a mortgage in favor of Washington Mutual Bank with the face amount of $62,400.00. Washington Mutual had the intent to hold the first and best lien in the Property. Washington Mutual did not have actual knowledge of the Certificate of Judgment in favor of Farm Credit Services of Mid-America, ACA.
 {¶ 23} "14. Chad Webb purchased the Property for the amount of $78,000.00.
 {¶ 24} "15. On January 14, 2003, the purchase and the loan transaction between Washington Mutual Bank, FA and Chad Webb was closed at First Title Agency, Inc.
 {¶ 25} "16. The mortgage from Chad Webb to Washington Mutual Bank, FA was recorded on February 3, 2003 in Volume 468 page 524 in the Morrow County Recorder's Office. That mortgage was re-recorded on January 23, 2004 in Volume 505, Page 769.
 {¶ 26} "17. $46.054.09 of the loan proceeds from Washington Mutual Bank, FA, were paid to satisfy the outstanding balance on the mortgage held by Fairbank Mortgage Bankers Corp."
 {¶ 27} It is clear from the stipulations that in the re-recording of the mortgage of Evelyn M. McNickle to Fairbank Mortgage Bankers Corp. (hereinafter "Fairbank") that Evelyn M. McNickle and Evelyn Knece were the same person. The July 30, 1998 mortgage held by Fairbank was paid off by the January 14, 2003 purchase by Chad Webb from Evelyn McNickle, and the monies came from Washington Mutual Bank, FA. A search of the records once it was clear that Evelyn Knece and Evelyn McNickle were one and the same would have revealed the July 20, 1999 certificate of judgment with the Knece/McNickle chain of title back to the 1971 and 1978 transfers.
 {¶ 28} We also concur with the trial court's finding that the placement of the initial "M" in the Knece and McNickle chain did not affect appellant's ability to be put on notice of the identity of the titleholder and the validity of the certificate of judgment.
 {¶ 29} Upon review, we find the trial court did not err in determining the certificate of judgment was properly perfected and attached to the subject property.
 {¶ 30} Assignment of Error I is denied.
 II, III {¶ 31} Appellant claims because he was a bona fide mortgagee for value of the January 4, 2003 lien it should have priority, and the doctrine of equitable subrogation requires the priority of appellant's lien. We agree in part.
 {¶ 32} Appellant argues the lack of knowledge of the certificate of judgment made it a bona fide mortgagee for value under R.C. 5301.25(A) which states the following:
 {¶ 33} "All deeds, land contracts referred to in division (A)(2)(b) of section 317.08 of the Revised Code, and instruments of writing properly executed for the conveyance or encumbrance of lands, tenements, or hereditaments, other than as provided in division (C) of this section and section 5301.23 of the Revised Code, shall be recorded in the office of the county recorder of the county in which the premises are situated. Until so recorded or filed for record, they are fraudulent insofar as they relate to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of that former deed, land contract, or instrument."
 {¶ 34} Although appellant argues it had no actual knowledge of the certificate of judgment, the Supreme Court of Ohio determined the term "knowledge" means the following:
 {¶ 35} "[T]his court adopted the view that, in order for a purchaser of real property to be charged with constructive notice of an encumbrance contained in a prior recorded instrument, the prior instrument must be recorded in the purchaser's chain of title." Spring Lakes v. O.F.M. Company (1984),12 Ohio St.3d 333, 336.
 {¶ 36} The Spring Lakes court at 337 quoted the following from 1 Patton on Titles (2 Ed. 1957) 231-232, section 69:
 {¶ 37} "* * * [T]he only fair rule is to hold that the record of an instrument will not afford constructive notice, if it is outside the chain under which a purchaser or encumbrancer claims title or lien. To hold otherwise would be to impose upon such parties the duty of making a general search of every instrument filed for record, without affording facilities therefor. * * *"
 {¶ 38} In our review of Assignment of Error I, we determined the certificate of judgment was within the chain of title which commenced in 1971. Therefore, the provisions of the Marketable Title Act do not apply sub judice.
 {¶ 39} Appellant also argues it is entitled to priority over the certificate of judgment based upon the theory of equitable subrogation. Equitable subrogation is defined by Justice Holmes in his dissenting opinion in State of Ohio, Department ofTaxation v. Jones (1980), 61 Ohio St.2d 99, 105, as follows:
 {¶ 40} "The doctrine of subrogation in its broadest sense is the substitution of one person for another with reference to a lawful claim or right, or the substitution of another person in the place of the creditor to whose rights he succeeds. * * * The general rule as to equitable subrogation is that `one who advances money to pay a prior lien, without discovering an intervening lien which a proper examination of the records would have disclosed, is not guilty of such negligence as will prevent his being subrogated to the prior lien as against the intervening lienor, especially where subrogation leaves the latter no worse off than he would have been had the prior lien not been paid.' 73 American Jurisprudence 2d 664, Subrogation, Section 104."
 {¶ 41} As noted, equitable subrogation is used to prevent unjust enrichment. In denying the relief of equitable subrogation, the Jones court at 104 stated it is necessary to review the totality of the circumstances. The trial court sub judice did so and found the facts do no permit equitable subrogation.
 {¶ 42} As found in Assignment of Error I, the certificate of judgment was clearly discoverable in the line of title commencing in 1971. The position assumed by appellant in paying off the mortgage to Fairbank also on its face established that Knece/McNickle were the same person and put appellant on notice of a name change and the necessity to continue investigating the line of title.
 {¶ 43} There is evidence of unjust enrichment to appellee because at the time of the filing of the certificate of judgment, July 20, 1999, the property was encumbered by the April 21, 1998 mortgage held by Fairbank with a face amount of $42,000.00. The amount appellant paid to Fairbank in 2003 was $46,054.09. Appellant secured title insurance in order to protect its interests. None of the blatant negligent acts noted in theJones case occurred sub judice. In particular, appellant was not the original mortgagee, but was subsequent to it. We therefore conclude the doctrine of equitable subrogation is applicable, but only to the extent of the 2003 payoff amount of the Fairbank mortgage, $46,054.09. In so doing, appellee would not be placed in any different circumstances than at the time of the filing of the certificate of judgment.
 {¶ 44} Assignment of Error II is denied. Assignment of Error III is granted in part.
 {¶ 45} The judgment of the Court of Common Pleas of Morrow County, Ohio is hereby affirmed in part, reversed in part and remanded.
By Farmer, J. Wise, P.J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Morrow County, Ohio is affirmed in part, reversed in part and remanded to said court for determination of priority in light of this court's opinion on the doctrine of equitable subrogation. Costs to be divided equally between appellant and appellee.