**ABN AMRO MORTGAGE GROUP, INC., Appellee,**

**v.**

**KANGAH et al., Appellees; Cuyahoga County Board of Commissioners, Department of Development, Appellant.**

[Cite as *ABN AMRO Mtge. Group, Inc. v. Kangah,*
180 Ohio App.3d 689, 2009-Ohio-359.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 91401.

Decided Jan. 29, 2009.

Ann Marie Johnson, Michael T. Huff, Danielle Konrad Pitcock, Lee R. Schroeder, and Michael J. Sikora III; and Shapiro & Felty and Christian E. Niklas, for appellee ABN AMRO Mortgage Group, Inc.

Kenneth J. Freeman Co., L.P.A. and Kenneth J. Freeman, for appellees Jacob Kangah et al.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Kelli Kay Perk, Assistant Prosecuting Attorney, for appellant.

Paul M. Nalepka, for Navy Federal Credit Union.

---

SEAN C. GALLAGHER, Presiding Judge.

{¶ 1} Defendant-appellant, Cuyahoga County Board of Commissioners, Department of Development ("CCDOD"), appeals the decision of the Cuyahoga County Court of Common Pleas, which determined that the mortgage held by plaintiff-appellee, ABN AMRO Mortgage Group, Inc. ("ABN"), had priority over CCDOD's mortgage. For the reasons that follow, we affirm.

{¶ 2} On July 5, 2000, Jacob Kangah executed a promissory note with First Ohio Mortgage Corporation ("First Ohio") for $68,916 that was secured by a mortgage on the property at 20617 Libby Road in Maple Heights, Ohio. In addition, Kangah executed a promissory note with CCDOD in the amount of $7,500, which was secured by a mortgage on the same property.

{¶ 3} Both mortgages were recorded on July 12, 2000, with the CCDOD mortgage specifically referred to and recorded as the subordinate security instrument. That same day, the First Ohio mortgage was assigned to Countrywide Home Loans, Inc. ("Countrywide").

{¶ 4} In May 2001, Kangah applied for a loan with ABN to refinance his property. In order to secure the loan, ABN required Kangah and his wife to

execute a mortgage that would be the first and best lien on the property. ABN retained First Class Title Agency, Inc. ("First Class") to perform a title search and the closing. First Class identified the First Ohio mortgage but not the CCDOD mortgage. A payoff statement was requested from Countrywide for the First Ohio mortgage.

{¶ 5} On June 12, 2001, Kangah received loan proceeds totaling $77,000 from ABN, which were secured by a mortgage on the property. The ABN mortgage was recorded on June 19, 2001. The loan proceeds were used to pay off the First Ohio mortgage, outstanding property taxes, and the fees and costs associated with the transaction.

{¶ 6} On November 7, 2001, the First Ohio mortgage was released of record due to satisfaction of the mortgage.

{¶ 7} On November 8, 2006, ABN filed a complaint for money judgment, foreclosure, and relief. On December 4, 2006, CCDOD filed its answer and cross-claim, alleging to have the first and best lien on the property.

{¶ 8} In August 2007, ABN moved for summary judgment as to the priority of its mortgage interest. The matter was stayed because Kangah filed a Chapter 13 bankruptcy petition. When the case was reactivated, CCDOD filed a brief in opposition.

{¶ 9} The magistrate granted summary judgment in favor of ABN on March 31, 2008, with decision to follow. In the meantime, on April 8, 2008, the trial court granted summary judgment in favor of ABN, "based on the doctrine of equitable subrogation," finding that ABN had paid the first mortgage lien and taxes when Kangah refinanced the property and that CCDOD held a subordinate mortgage. The court indicated "no just cause for delay." On April 15, 2008, the magistrate filed her decision. CCDOD filed a motion to clarify (asking which was the final order), then objections to the magistrate's decision, and finally a notice of appeal.

{¶ 10} CCDOD advances one assignment of error for our review, which states the following:

{¶ 11} "The trial court erred when it granted Appellee ABN AMRO Mortgage Group Inc.'s motion for partial summary judgment on the issue of lien priority."

■ {¶ 12} This court reviews a trial court's grant of summary judgment de novo. *Ekstrom v. Cuyahoga Cty. Community College*, 150 Ohio App.3d 169, 2002-Ohio-6228, 779 N.E.2d 1067. Before summary judgment may be granted, a court must determine that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one

conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." *State ex rel. Dussell v. Lakewood Police Dept.,* 99 Ohio St.3d 299, 2003-Ohio-3652, 791 N.E.2d 456, ¶ 6, citing *State ex rel. Duganitz v. Ohio Adult Parole Auth.* (1996), 77 Ohio St.3d 190, 191, 672 N.E.2d 654.

{¶ 13} CCDOD argues that the doctrine of equitable subrogation does not apply in this case because ABN failed to discover a validly recorded prior mortgage. CCDOD contends that the general rule "first in time, first in right" applies in this case.

{¶ 14} ABN argues that the doctrine of equitable subrogation applies because ABN satisfied the First Ohio mortgage, which had priority over the CCDOD mortgage. In addition, it was ABN's intent to hold the first and best lien on the property, while it was CCDOD's intent to hold a subordinate lien.

{¶ 15} R.C. 5301.23 sets forth the general rule that the first mortgage that is presented and recorded has preference over a subsequently presented and recorded mortgage. The priority of a mortgage is determined by reviewing the recording chronology. *Washington Mut. Bank, FA v. Aultman,* 172 Ohio App.3d 584, 2007-Ohio-3706, 876 N.E.2d 617.

{¶ 16} "In some circumstances, the doctrine of equitable subrogation can overcome the general statutory rule." Id. at ¶ 24. Equitable subrogation " 'arises by operation of law when one having a liability or right or a fiduciary relation in the premises pays a debt by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid.' " *State v. Jones* (1980), 61 Ohio St.2d 99, 102, 15 O.O.3d 132, 399 N.E.2d 1215, quoting *Fed. Union Life Ins. Co. v. Deitsch* (1934), 127 Ohio St. 505, 510, 189 N.E. 440. In order to be entitled to equitable subrogation, the "equity must be strong and [the] case clear." *Jones* at 102, 15 O.O.3d 132, 399 N.E.2d 1215.

{¶ 17} In other words, a third party who, with its own funds, satisfies and discharges a prior first mortgage on real estate, upon express agreement with the owner that it will be secured by a mortgage on that real estate, is subrogated to all of the rights of the first mortgagee in that real estate. *Deitsch* at paragraph one of the syllabus. Therefore, if the parties intended, a mortgagee who satisfies the first mortgage steps into the shoes of the first mortgagee.

{¶ 18} Nevertheless, some courts have not applied the doctrine of equitable subrogation, even when the party intended to hold the first and best lien. For instance, two districts have not applied the doctrine of equitable subrogation when the party actually knew of the competing lien and failed to take adequate steps to protect its interest. See *Keybank Natl. Assn. v. Adams,* Franklin App.

No. 02AP–1293, 2003-Ohio-6651, 2003 WL 22927344; *Fifth Third Bank v. Lorance*, Butler App. No. CA2006–10–280, 2007-Ohio-4217, 2007 WL 2350128.

{¶ 19} Some courts have not applied the doctrine of equitable subrogation when the party is negligent in its business practices (i.e., failing to record the mortgage lien in a timely fashion), and the party is in the best position to protect its interest. See *Old Republic Natl. Title Ins. Co. v. Fifth Third Bank*, Hamilton App. No. C–070567, 2008-Ohio-2059, 2008 WL 1914297; *State Sav. Bank v. Gunther* (1998), 127 Ohio App.3d 338, 713 N.E.2d 7; *Huntington Natl. Bank v. Allgier*, Wood App. No. WD–07–061, 2008-Ohio-1289, 2008 WL 746984.

{¶ 20} Also, two districts have declined to apply the doctrine of equitable subrogation when the title company failed to discover a preexisting and validly recorded mortgage, in essence, eliminating the doctrine altogether. See *Leppo, Inc. v. Kiefer* (Jan. 31, 2001), Summit App. Nos. 20097 and 20105, 2001 WL 81262; *Assoc. Fin. Serv. Corp. v. Miller* (Apr. 5, 2002), Portage App. No. 2001–P–0046, 2002 WL 519667.

{¶ 21} Still, several courts allow equitable subrogation when the party mistakenly failed to discover a preexisting and validly recorded mortgage. See *Aultman*, 172 Ohio App.3d 584, 2007–Ohio–3706, 876 N.E.2d 617; *Fed. Natl. Mtge. Assn. v. Webb*, Morrow App. No. 2005CA0013, 2006-Ohio-3574, 2006 WL 1901016; *Cadle Co. No. 2 v. Rendezvous Realty* (Sept. 2, 1993), Cuyahoga App. Nos. 63565 and 63724, 1993 WL 335444; *Washington Mut. Bank v. Hopkins*, Franklin App. No. 07AP–320, 2007-Ohio-7008, 2007 WL 4532679. These courts have followed the Ohio Supreme Court's decision in *Jones*, which explained that equitable subrogation is applied to prevent fraud and relief from mistakes. *Jones*, 61 Ohio St.2d 99, 15 O.O.3d 132, 399 N.E.2d 1215.

{¶ 22} In the case at hand, we find that the doctrine of equitable subrogation applies because ABN intended to hold the first and best lien on the property, CCDOD agreed to its subordinate security interest, ABN's title company's failure to discover CCDOD's mortgage lien was a mere mistake, and CCDOD was not prejudiced by its inferior position.

{¶ 23} Next, CCDOD argues that the doctrine of equitable subrogation cannot be applied to a political subdivision. ABN argues that this issue was waived because CCDOD failed to raise the issue below. We disagree. Although not ruled upon, CCDOD asserted this argument in the objections to the magistrate's decision.

{¶ 24} CCDOD asserts that because equitable subrogation is essentially a theory of unjust enrichment, it does not apply. CCDOD cites *Cooney v. Independence* (Nov. 23, 1994), Cuyahoga App. No. 66509, 1994 WL 663453, for its position. Specifically, CCDOD relies on this court's statement that "it has been

said that a municipal corporation would not be liable upon quasi or implied contracts or for claims based upon theories of quantum meruit or unjust enrichment." Id. at *2, citing *Cuyahoga Falls v. Ashcraft* (Dec. 26, 1991), Summit App. No. 15129, 1991 WL 284188.

{¶ 25} This statement is taken out of context and does not stand for the proposition that equitable subrogation cannot apply to a political subdivision. In *Cooney*, 1994 WL 663453, the plaintiff tried to enforce an oral employment contract against the city. The trial court dismissed the case for failure to state a claim. Id. This court affirmed the trial court's decision, citing *Ashcraft*, 1991 WL 284188. *Cooney*, 1994 WL 663453. In *Ashcraft* at *4, the court explained as follows: "[a]s a check against misuse of city authority by local officials, procedural safeguards have been adopted which govern the creation of public obligations and liabilities. Generally, municipalities may not be bound to a contract unless the agreement is formally ratified through proper channels. *Wellston v. Morgan* (1901), 65 Ohio St. 219[, 62 N.E. 127], paragraph three of the syllabus; *Seven Hills v. Cleveland* (1988), 47 Ohio App.3d 159, 161–163[, 547 N.E.2d 1024]. As a result, a claim may not be sustained against a municipal corporation upon theories of implied or quasi-contract. *Montz Sales & Service, Inc. v. Barberton* (1983), 10 Ohio App.3d 157, 158[, 10 OBR 209, 460 N.E.2d 1159]; see 21 Ohio Jurisprudence 3d (1980) 371, Counties[,] Townships, and Municipal Corporations, Section 809. Only express agreements adopted by the City in accordance with law may be enforced." Cooney failed to state a claim because he did not have a written employment contract. *Cooney.*

{¶ 26} The *Cooney* case is wholly inapplicable to the case at hand. Although equitable subrogation has been called "a theory of unjust enrichment," we agree with ABN that equitable subrogation is not limited to or by the concept of unjust enrichment. Unjust enrichment occurs when a person has and retains money or benefits that in justice and in equity belong to another. *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791. In the mortgage context, the doctrine of equitable subrogation is strictly confined to situations when "those who furnish or advance the purchase money to the purchaser in such a manner that they can be said either to have paid it to the vendor personally, or caused it to be paid on behalf of and for the benefit of the purchaser, and to this extent they become parties to the transaction. It must not be a general loan to be used by the purchaser to pay the consideration of the purchase, or to be used for any other purpose at his pleasure." *Deitsch*, 127 Ohio St. at 510–511, 189 N.E. 440.

{¶ 27} Here, ABN was not unjustly enriched. ABN paid off the first mortgage and expected to have first priority. CCDOD never expected to have first priority. This court has held that a title company's negligence is not material in

cases in which the competing lienholder "was not misled or injured, because it did not bargain for or expect a first lien position." *Cadle Co.*, 1993 WL 335444. Accordingly, CCDOD's first assignment of error is overruled.

Judgment accordingly.

BOYLE and SWEENEY, JJ., concur.