INDYMAC BANK, FSB, Appellee,

v.

BRIDGES et al., Appellees;

Goss, Appellant.

[Cite as *IndyMac Bank, FSB v. Bridges,* 169 Ohio App.3d 389, 2006-Ohio-5742.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 05AP–1214.

Decided Nov. 2, 2006.

McDonald, Franks, Hitzeman & Holman, and Robert B. Holman, for appellee.

Maguire & Schneider, L.L.P., Karl H. Schneider, Sharlene I. Chance, and Johnathan R. Secrest, for appellant.

---

BROWN, Judge.

{¶ 1} This is an appeal by defendant-appellant, Robert L. Goss, from a judgment of the Franklin County Court of Common Pleas granting the motion for summary judgment filed by plaintiff-appellee, IndyMac Bank, FSB ("Indy-Mac").

{¶ 2} The essential facts of this case are not in dispute. On December 13, 1999, Theodora Key executed a mortgage deed in favor of International Mortgage Center, in the principal sum of $48,930, encumbering property located at 1316–1318 East 25th Avenue, Columbus, Ohio ("the property"). The mortgage was filed for record in the Franklin County Recorder's Office on January 12, 2000.

{¶ 3} Also on December 13, 1999, Key granted a balloon mortgage in favor of appellant in the principal amount of $17,475, which contained a "due-on-sale" clause. This mortgage was initially filed with the Franklin County Recorder's Office on January 25, 2000, but was re-recorded on February 17, 2000, to correct a notary public's failure to properly acknowledge the signature of Key's husband, Robert Key III, to the mortgage instrument.

{¶ 4} On January 19, 2001, Key sold the property to her son, Jacob H. Bridges, for the sum of $72,000. Bridges, in turn, granted a mortgage in favor of IndyMac's predecessor in interest, Third Financial Services Corporation (hereafter also referred to as "IndyMac"), securing the principal amount of $64,800; this mortgage was recorded on February 7, 2001. At closing, the closing agent disbursed the sum of $53,468.54 to International Mortgage to pay off the "first mortgage loan"; the agent also disbursed $11,351.57 to Key. Appellant, however, did not receive any proceeds, apparently because the title examiner did not discover appellant's mortgage.

{¶ 5} On March 14, 2002, IndyMac filed a complaint against Bridges, alleging that he was in default under the terms of a note and mortgage and that there was now due and owing the sum of $64,503.92, plus interest. On April 29, 2002, IndyMac filed a motion to add appellant as a defendant to the action, and the trial court subsequently granted the motion.

{¶ 6} On October 24, 2003, IndyMac filed a motion for default judgment against Bridges. By an agreed judgment and decree in foreclosure filed on December 16, 2003, the trial court rendered judgment in favor of IndyMac, reserving the issue as to lien priority "for further motion of party." A notice of sheriff's sale

was filed, and the property was sold on March 12, 2004, for $42,000. By entry filed April 2, 2004, the trial court confirmed the sale of the real estate, finding that IndyMac was the holder of a judgment for the full amount of the net sale proceeds.

{¶ 7} On September 9, 2004, appellant filed a motion with the trial court to set aside the order of distribution. In the accompanying memorandum, appellant asserted that he had a meritorious defense pursuant to Civ.R. 60(B)(1) and (5).

{¶ 8} On January 4, 2005, IndyMac filed a motion for summary judgment, contending that it held a first and best lien on the property at issue and thus no material fact remained to be litigated as to the issue of priority. On January 18, 2005, appellant filed a motion for leave to file a motion for summary judgment on the issue of lien priority. On February 1, 2005, IndyMac filed a memorandum in opposition to appellant's motion for summary judgment.

{¶ 9} By decision filed September 14, 2005, the trial court granted IndyMac's motion for summary judgment, holding that IndyMac's mortgage was entitled to priority over appellant's mortgage under the doctrine of equitable subrogation. The decision of the trial court was journalized by judgment entry filed October 14, 2005.

{¶ 10} On appeal, appellant sets forth the following single assignment of error for this court's review:

> The trial court erred when it granted appellee's motion for summary judgment when it determined that appellee is entitled to stand in the shoes of a prior mortgage holder pursuant to the doctrine of [equitable] subrogation.

{¶ 11} Under his single assignment of error, appellant challenges the trial court's granting of summary judgment in favor of IndyMac. More specifically, appellant argues that the trial court erred in allowing IndyMac to stand in the shoes of a prior mortgage holder based upon the doctrine of equitable subrogation.

{¶ 12} Pursuant to Civ.R. 56(C), summary judgment is proper if (1) there is no genuine issue of material fact remaining to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. An appellate court's review of a trial court's summary judgment decision is de novo. Id. Thus, a reviewing court "applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination." *In re Protest of Evans*, Franklin App. No. 06AP–539, 2006-Ohio-4690, 2006 WL 2590613, at ¶ 8.

{¶ 13} Under the provisions of R.C. 5301.23(A), "the general rule is that 'the first mortgage recorded shall have preference' over subsequently recorded mortgages." *Washington Mut. Bank v. Loveland,* Franklin App. No. 04AP–920, 2005-Ohio-1542, 2005 WL 737403, at ¶ 10. In some circumstances, however, "the doctrine of equitable subrogation can defeat this statutory rule of first in time, first in right." Id. at ¶ 11. This doctrine " 'arises by operation of law when one having a liability or right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid.' " *Chase Manhattan Bank v. Westin,* Clermont App. No. CA2002–12–099, 2003-Ohio-5112, 2003 WL 22227394, at ¶ 9, quoting *Fed. Union Life Ins. Co. v. Deitsch* (1934), 127 Ohio St. 505, 510, 189 N.E. 440. The purpose of equitable subrogation "is to prevent fraud and to provide relief from mistakes." *Westin,* supra, at ¶ 9. Further, in order to be entitled to equitable subrogation, "a party's equity must be strong and his case clear." Id.

{¶ 14} In arguing that the trial court erred in granting summary judgment in favor of IndyMac, appellant notes that at the time IndyMac recorded its mortgage on February 7, 2001, following the sale to Bridges, appellant's mortgage was of record and took priority over the one held by IndyMac. Appellant further argues that the facts of this case fail to show that IndyMac's equity is strong and clear and that the trial court improvidently utilized the doctrine of equitable subrogation to realign his mortgage behind IndyMac's mortgage.

{¶ 15} In response, IndyMac argues that appellant originally bargained for second-mortgage position behind the amount owed to International Mortgage; therefore, IndyMac asserts, appellant has suffered no prejudice by application of the doctrine of equitable subrogation because he remains in the same position with no change in priorities.

{¶ 16} Based upon this court's de novo review of the record, we find that the doctrine of equitable subrogation is not applicable, and we therefore reverse the trial court's granting of summary judgment in favor of IndyMac. As noted under the facts, Key initially granted a mortgage in favor of International Mortgage in the amount of $48,930 (and recorded on January 12, 2000). Key also granted a balloon mortgage in favor of appellant in the amount of $17,475 (recorded on January 25, 2000, and re-recorded on February 17, 2000). In January 2001, Key sold the property to Bridges for the sum of $72,000. Bridges, in turn, granted a mortgage in favor of IndyMac, in the amount of $64,800, which was recorded in February 2001. At the closing of the Key sale, the closing agent disbursed $53,468.54 to International Mortgage to pay off the first mortgage loan, and Key also received $11,351.57 at the closing. However, as acknowledged by IndyMac, appellant did not receive any proceeds from the Key sale apparently because

IndyMac's title examiner failed to discover appellant's mortgage during the title examination. Following Bridges's subsequent default on the loan, IndyMac received the entire proceeds (approximately $42,000) from the sheriff's sale.

{¶ 17} While appellant stood second in priority in relation to International Mortgage at the time he filed his balloon mortgage, he nevertheless had an expectation that he would receive any balance of proceeds available in the event Key sold the property. Appellant notes that he specifically bargained for the right to ensure payment, in the event of a change of ownership, by including a "due-on-sale" clause [1] in the Key balloon mortgage. As noted, however, at the time of the sale of the property by Key to Bridges, IndyMac paid off the mortgage of International Mortgage, but appellant did not receive any of the remaining funds because IndyMac's title examiner failed to discover appellant's mortgage. Had the title examiner discovered the mortgage during the title search, appellant would have been entitled to the balance (approximately $11,000) of funds disbursed instead to the seller (Key). We further note that while appellant originally stood second in priority to a $48,930 mortgage held by International Mortgage, the Key sale resulted in a much greater encumbrance granted by the new owner in favor of IndyMac ($64,800), and when the property was subsequently sold at the sheriff's sale for $42,000, IndyMac received the entire proceeds from that sale.

{¶ 18} Under the circumstances of this case, we agree with appellant's contention that his position changed, to his prejudice, when Key sold the property to a new owner but appellant received no proceeds at the time of that sale, due to the failure of the title examiner to discover appellant's properly recorded mortgage. This failure on the part of IndyMac's agent, which prevented appellant from otherwise receiving the balance of available funds, resulted in material prejudice to appellant's position.

{¶ 19} Moreover, because IndyMac was in the best position to discover appellant's mortgage interest at the time of the Key sale, but failed to do so, we find that the equities are not strong in IndyMac's favor. See, e.g., *Keybank Natl. Assn. v. GMAC Mtge. Corp.*, Franklin App. No. 02AP–1293, 2003-Ohio-6651, 2003 WL 22927344, at ¶ 20 ("Equitable subrogation will not be used to benefit parties who were negligent in their business transactions, and who were obviously in the best position to protect their own interests"); *Assoc. Financial Servs. Corp. v. Miller* (Apr. 5, 2002), Portage App. No.2001–P–0046, 2002 WL 519667 (doctrine of equitable subrogation did not apply to give second mortgage holder priority over

---

1. A "due-on-sale" clause has been defined as "a contractual provision that permits the lender to declare the entire balance of a loan immediately due and payable if the property securing the loan is sold or otherwise transferred." *Fid. Fed. S. & L. Assn. v. de la Cuesta* (1982), 458 U.S. 141, 145, 102 S.Ct. 3014, 73 L.Ed.2d 664.

first mortgage holder, even though holder of first mortgage willingly accepted inferior position, when second mortgagee's agent conducted title search and failed to discover preexisting mortgage, and there was no allegation that holder of first mortgage acted fraudulently or tried to conceal its properly recorded mortgage).

{¶ 20} Finally, we find the facts of this case to be distinguishable from cases relied upon by IndyMac in which the application of the doctrine did not result in prejudice. See, e.g., *Fed. Home Loan Mtge. Corp. v. Moore* (Sept. 27, 1990), Franklin App. No. 90AP–546, 1990 WL 140556 (any negligence by a title company is immaterial when no one was injured or misled: "[n]o one changed their position in reliance on the mistake, and there was no prejudice to subsequent intervening rights which could cause a court to regard [title agency's] negligence as significant").

{¶ 21} Accordingly, the trial court erred in finding that IndyMac was entitled to stand in the shoes of International Mortgage, pursuant to the doctrine of equitable subrogation, and we therefore reverse the trial court's granting of summary judgment in favor of IndyMac. Based upon the foregoing, appellant's single assignment of error is sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this matter is remanded to that court for further proceedings in accordance with law, consistent with this opinion.

Judgment reversed
and cause remanded.

KLATT, P.J., and TRAVIS, J., concur.