**WASHINGTON MUTUAL BANK, FA, Appellant,**

v.

**AULTMAN et al., Appellees.**

[Cite as *Washington Mut. Bank, FA v. Aultman,* 172 Ohio App.3d 584, 2007-Ohio-3706.]

Court of Appeals of Ohio,
Second District, Champaign County.

No. 2006 CA 25.

Decided July 20, 2007.

David T. Brady, for appellant.

Darrell L. Heckman, for appellee Diana Caldwell.

WOLFF, Presiding Judge.

{¶ 1} Washington Mutual Bank, FA, appeals from a judgment of the Champaign County Court of Common Pleas, which denied its motion for summary judgment and granted the motion of Diana Caldwell for summary judgment, finding that Caldwell was entitled to first lien priority on property owned by

Steven and Kathy Aultman. For the following reasons, the judgment is reversed, and the cause is remanded for further proceedings.

{¶ 2} The facts underlying this appeal are undisputed.

{¶ 3} On November 26, 1994, Diana Caldwell sold the property located at 120–122 East Church Street in Urbana, Ohio, to Steven and Kathy Aultman.[1] The Aultmans obtained a mortgage loan from Peoples Savings Bank in the amount of $63,000. The loan from Peoples Savings Bank did not satisfy the full purchase price. Consequently, the Aultmans also granted a mortgage on the Church Street property to Caldwell in the amount of $12,000. Caldwell's mortgage required a single balloon payment of $29,405.37 on November 1, 2003. A deed for the property and Peoples Savings Bank's mortgage were filed with the Champaign County Recorder's Office on November 28, 1994. On December 5, 1994, Caldwell filed her mortgage with the Recorder's Office. The parties agree that Peoples Savings Bank's mortgage was senior in priority to Caldwell's mortgage.

{¶ 4} On August 13, 1997, the Aultmans obtained a mortgage loan from American Equity Mortgage, Inc., in the amount of $97,500. American Equity used $62,234 of the loan proceeds to satisfy the Peoples Savings Bank mortgage. The Aultmans received the balance of the proceeds in cash. None of the proceeds were used to pay off the Caldwell mortgage. On the same day, American Equity assigned the mortgage to North American Mortgage Company, Washington Mutual's predecessor in interest. The mortgage and the assignment of mortgage were filed with the Recorder's Office on August 19, 1997.

{¶ 5} The Aultmans defaulted on Washington Mutual's mortgage. Consequently, on December 24, 2002, Washington Mutual filed an in rem foreclosure action against the Aultmans. Although the complaint acknowledged that Caldwell had recorded a mortgage on December 5, 1994, Washington Mutual requested, in part, that its mortgage be adjudged a valid first and best lien on the Church Street property. In her answer, Caldwell asserted that her mortgage was the first and best lien on the property.

{¶ 6} On April 6, 2004, the trial court entered a default judgment of foreclosure against the Aultmans, and it ordered a sheriff's sale of the property. The sheriff's sale was subsequently cancelled while Washington Mutual and Caldwell attempted to settle the issue of which mortgage had first-lien priority. When the parties failed to resolve the issue, the case was returned to the active docket. On

---

1. Although Caldwell's affidavit states that she sold the property on or about December 1, 1994, the certificate of preliminary judicial title report filed with the court on December 23, 2002, noted a survivorship deed from Caldwell to the Aultmans dated November 26, 1994, and filed on November 28, 1994. These are the same dates that the mortgage was executed and subsequently filed.

December 14, 2004, Washington Mutual filed a motion for summary judgment, requesting first-lien priority in the amount of $62,234 plus interest due to equitable subrogation. After additional discovery, Caldwell also filed a summary judgment motion seeking to establish that her mortgage had priority over Washington Mutual's mortgage.

{¶ 7} On June 30, 2006, the trial court granted Caldwell's motion for summary judgment and overruled Washington Mutual's motion. The court noted that under R.C. 5301.23(A), Caldwell's mortgage has priority over Washington Mutual's mortgage. Although the court recognized that equitable subrogation can defeat the priority scheme set forth in R.C. 5301.23, the court held that Washington Mutual was not entitled to equitable subrogation in this case. The court reasoned that Washington Mutual had failed to discover Caldwell's properly recorded mortgage, that there was no evidence that Washington Mutual was not in control of the loan process, and that there was no allegation that Caldwell had acted fraudulently or otherwise tried to conceal her mortgage from Washington Mutual. The court rejected Washington Mutual's assertion that granting Caldwell's mortgage first priority would constitute unjust enrichment, stating: "Instead, if equitable subrogation were applied in the instant matter, an innocent third party, Defendant Caldwell, would be harmed." The court further stated that Washington Mutual's mortgage provided that it was subject to "encumbrances of record." The court thus concluded that Washington Mutual's failure to discover a properly recorded mortgage rendered equitable subrogation inappropriate in this case.

{¶ 8} Washington Mutual raises two assignments on appeal, which we will address in reverse order.

{¶ 9} II. "The trial court erred in finding as fact that Washington Mutual's predecessor in interest accepted the subject mortgage 'subject to "encumbrances of record." ' "

{¶ 10} In its second assignment of error, Washington Mutual claims that the trial court erroneously found that the bank had accepted the mortgage subject to "encumbrances of record."

{¶ 11} In ruling that Washington Mutual was not entitled to equitable subrogation, the trial court made the following finding:

{¶ 12} "34. The mortgage deed from Defendants Aultman to American Equity stated that the instant mortgage was issued subject to 'encumbrances of record.' Thus, it is clear that Plaintiff's predecessor in interest accepted the mortgage subject to encumbrances of record, but that it failed to discover Defendant Caldwell's properly recorded mortgage. See *Kiefer*, supra."

{¶ 13} Washington Mutual argues that the trial court misread the relevant mortgage provision, which stated: "Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record." Washington Mutual states that in this provision, the Aultmans granted the bank a covenant of seisin and a covenant against encumbrances. The bank asserts that this provision did not "serve to put all parties on notice that Washington Mutual takes subject to encumbrances of record."

{¶ 14} Caldwell responds that Washington Mutual's assignment is nothing more than "a semantic quibble of little significance." She contends that the trial court's finding "was undoubtedly made to further distinguish this case from [*Federal Home Loan Mtge. Corp. v. Moore* (Sept. 27, 1990), Franklin App. No. 90AP–546, 1990 WL 140556] by showing that no one averred that there were no other mortgages of record. * * * The point is the mortgage was subject to other mortgages as a matter of law and no affidavit by the appellee, the sellers or anyone else stated the contrary."

{¶ 15} In our view, the provision in the mortgage at issue merely stated that the borrower warranted that there were no encumbrances, other than those of record, on the property. The provision did not specify what encumbrances existed. Moreover, it did not indicate that the mortgagee agreed that it would subordinate the mortgage to any or all of those encumbrances. To the contrary, other provisions in the mortgage required the Aultmans to discharge any lien that had priority over the American Equity mortgage. For example, Paragraph 4 of the mortgage provided:

{¶ 16} "Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice."

{¶ 17} The 1–4 Family Rider further provided that "[e]xcept as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission."

{¶ 18} Based on the unambiguous terms of the mortgage, we agree with Washington Mutual that to the extent that the trial court found that Washington Mutual had agreed to take its mortgage subject to—and subordinate to—existing encumbrances, that finding is not supported by the mortgage document.

{¶ 19} The second assignment of error is sustained.

{¶ 20} I. "The trial court erred as a matter of law and committed reversible error when it denied the motion for summary judgment of Washington Mutual, FA, and granted the motion for summary judgment of Caldwell, finding that Washington Mutual Bank, FA, is not entitled to first lien position under the doctrine of equitable subrogation."

{¶ 21} Washington Mutual asserts that it was entitled to first-lien priority under the doctrine of equitable subrogation and that the trial court should have granted its motion for summary judgment. As an initial matter, we note that Washington Mutual has sought first priority for only $62,234 of its $97,500 loan, which represents the portion of the loan that was used to pay off the Peoples Savings Bank mortgage. The balance of the $97,500 loan is not at issue.

{¶ 22} Our review of the trial court's decision to grant summary judgment is de novo. See *Helton v. Scioto Cty. Bd. of Commrs.* (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. See *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 65–66, 8 O.O.3d 73, 375 N.E.2d 46.

{¶ 23} R.C. 5301.23 sets forth the general rule that the first mortgage that is presented and recorded has preference over a subsequently presented and recorded mortgage. R.C. 5301.23(A). Accordingly, under the statutory scheme, the priority of a mortgage is determined simply by reviewing the recording chronology.

{¶ 24} In some circumstances, the doctrine of equitable subrogation can overcome the general statutory rule. See, e.g., *IndyMac Bank, FSB v. Bridges,* 169 Ohio App.3d 389, 2006–Ohio–5742, 863 N.E.2d 185, ¶ 13. Equitable subrogation " 'arises by operation of law when one having a liability or right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor

whom he has paid.' " [2]  *State v. Jones* (1980), 61 Ohio St.2d 99, 102, 15 O.O.3d 132, 399 N.E.2d 1215, quoting *Fed. Union Life Ins. Co. v. Deitsch* (1934), 127 Ohio St. 505, 510, 189 N.E. 440.  In order to be entitled to equitable subrogation, "[the] equity must be strong and [the] case clear."  *Jones*, 61 Ohio St.2d at 102, 15 O.O.3d 132, 399 N.E.2d 1215.

{¶ 25}  In *Jones*, the Supreme Court of Ohio considered whether a mortgagee was entitled to equitable subrogation when, after refinancing the mortgagor's loan, it unexpectedly found that it was subordinate to a prior recorded state tax lien.  In that case, the property owners sought to refinance their mortgage with Cleveland Federal Savings & Loan Association.  Cleveland Federal hired Midland Title to perform a title search of the property.  The August 1976 search revealed only the existing mortgage.  After the title search but prior to executing the refinancing loan and mortgage, an Internal Revenue Service lien and two CPA certificates of judgment were filed for record.  On September 21, 1976, the property owners and Cleveland Federal executed a second mortgage in the amount of $44,000.  The second mortgage was not recorded, however, until December 29, 1976.  In the interim, the state of Ohio filed a certificate of judgment lien in the amount of $70,000.  In January 1977, Cleveland Federal satisfied the federal tax lien and the two CPA judgment liens, and it cancelled its own first mortgage.  Cleveland Federal subsequently found that its mortgage was subordinate to the state's tax lien.

{¶ 26}  On review, the Supreme Court rejected Cleveland Federal's assertion that it was entitled to equitable subrogation.  The court reasoned that Cleveland Federal's "own actions led to its dilemma of not obtaining the best priority lien. [Cleveland Federal] was in complete control of the refinancing application, and, yet, by [its] own actions and inactions, the state, without acting fraudulently, was able to secure priority of its claims by its filing on October 19, 1976."  Id. at 102–103, 15 O.O.3d 132, 399 N.E.2d 1215.  The court noted that Cleveland Federal had expressly told the title company not to file the second mortgage until instructed to do so, which was more than three months after the execution of the document.  Moreover, Cleveland Federal had cancelled its own mortgage without first receiving any title guarantee from the title company.  The court further noted that Cleveland Federal was aware of the "unusual debts to the accounting firm and also the Internal Revenue Service claim," but failed to inquire further as to any additional claims.  The Supreme Court supported its decision by reference

---

2.  Equitable subrogation is distinct from conventional subrogation, which is premised on the contractual obligations of the parties.  "The focus of conventional subrogation is the agreement of the parties which must, in essence, allow the payor-creditor to be substituted for the creditor who is being discharged by the payor's loan."  *Jones*, 61 Ohio St.2d at 101, 399 N.E.2d 1215.

to *Ft. Dodge Bldg. & Loan Assn. v. Scott* (1892), 86 Iowa 431, 53 N.W. 283, in which the Iowa Supreme Court denied equitable subrogation to a mortgagee that had relied upon an outdated abstract of title, contrary to ordinary business practice.

{¶ 27} Washington Mutual asserts that the present circumstances are distinguishable from *Jones* in that it did not act imprudently. Although Washington Mutual's title examiner missed the Caldwell mortgage in its title search, the bank had obtained an updated title search, the bank had intended to take first priority on the Church Street property, and it had promptly filed the mortgage for record six days after execution. Washington Mutual asserts that the title examiner's failure to note the Caldwell mortgage "should not be so material as to deny Washington Mutual recovery under the doctrine of equitable subrogation."

{¶ 28} In support of its assertion, Washington Mutual urges this court to follow *Moore*. In that case, the homeowners (the Moores) had a personal residential mortgage loan with Diamond Savings & Loan and second and third mortgages with Fifth Third Bank to secure a $750,000 business loan. When the Moores refinanced their personal mortgage, the title company employed by Diamond mistakenly missed the mortgages to Fifth Third. Consequently, when Diamond released its first mortgage, Fifth Third's mortgages gained first priority. On appeal, the Tenth District reversed the trial court's denial of equitable subrogation. Distinguishing *Jones,* the appellate court reasoned that Diamond filed its mortgage only six business days after its execution and that Diamond's negligence was "only an ordinary mistake by Diamond's agent during its title search." The Tenth District further emphasized that the negligence was "immaterial" because Fifth Third was neither misled nor injured by the mistake. The court noted that Fifth Third had expected to be inferior in priority to Diamond's lien.

{¶ 29} Washington Mutual further asserts that the trial court inappropriately relied upon cases from the Fifth, Ninth, and Eleventh Districts, as well as more recent cases from the Tenth District. See *Washington Mut. Bank v. Loveland,* Franklin App. No. 04AP–920, 2005–Ohio–1542, 2005 WL 737403; *Keybank Natl. Assn. v. GMAC Mtge. Corp.,* Franklin App. No. 02AP–1293, 2003–Ohio–6651, 2003 WL 22927344; *Chase Manhattan Bank v. Westin,* Clermont App. No. CA2002–12–099, 2003–Ohio–5112, 2003 WL 22227394; *FirstMerit Bank, N.A. v. Andrews,* Portage App. No. 2003–P–121, 2004–Ohio–5104, 2004 WL 2803228. Washington Mutual argues that the factual circumstances in each of these cases is distinguishable, because the party seeking equitable subrogation was negligent beyond mere mistake.

{¶ 30} Finally, Washington Mutual argues that Caldwell would not be prejudiced by the subrogation because she would be in the same position that existed prior to the Aultmans' refinancing of the Church Street property. Moreover, the

bank claims that Caldwell would be unjustly enriched by the first lien priority because she did not bargain for first lien position and gave no consideration for that priority.

{¶ 31} In response, Caldwell argues that this matter is governed by *Jones* and that Washington Mutual's negligence precludes the application of equitable subrogation. Although Caldwell asserts that *Jones* resolves the issue, she notes that the Eleventh District in *Assocs. Fin. Servs. v. Miller* (Apr. 5, 2002), Portage App. No. 2001–P–46, 2002 WL 519667, affirmed the denial of Pan American Bank's request for equitable subrogation when the bank's agent conducted a title search but failed to discover a preexisting mortgage. The *Miller* court reasoned that Pan American "was in complete control of the loan process, and there is no allegation that appellee acted fraudulently or otherwise tried to conceal its properly recorded mortgage from appellant." The court rejected Pan American's contention that the appellee was unjustly enriched simply because the bank's negligence provided it with a benefit. The court concluded: "Equitable subrogation will not be used to benefit parties who were negligent in their business transactions, and who were obviously in the best position to protect their own interests."

{¶ 32} Caldwell asserts that *Moore* was decided wrongly and that the Tenth District failed to rationally distinguish *Jones*. Caldwell also states that *Moore* involved refinancing by the same lender while the present case involves a different lender and a different amount.

{¶ 33} Caldwell further argues that negligence in failing to conduct a property title search is not a valid basis for employing equitable subrogation. She contends that applying equitable subrogation in such circumstances would encourage carelessness and obviate the need for title searches and title insurance.

{¶ 34} In our view, Caldwell reads *Jones* too restrictively. *Jones* does not prohibit the application of equitable subrogation in all circumstances in which the mortgagee has been negligent. Rather, *Jones* and *Scott,* which *Jones* followed, denied the application of equitable subrogation because the party seeking equitable subrogation had failed to act in conformity with ordinary and reasonable practices to establish its first priority. See, also, *State Sav. Bank v. Gunther* (1998), 127 Ohio App.3d 338, 713 N.E.2d 7 (denying equitable subrogation when bank filed the promissory note and mortgage nine months after closing on the transaction).

{¶ 35} The same was true in *Loveland, Keybank,* and *Westin.* In *Loveland,* the Tenth District Court of Appeals denied Washington Mutual's request for equitable subrogation when the bank failed to ensure that Fifth Third Bank, with which the mortgagors had a revolving line of credit, closed the home equity line. The court stated: "[A]ppellant failed to follow the proper procedures to have the

account closed and also failed to confirm that the equity line had been closed and properly released to ensure that it had first priority in the public records." Id. at ¶ 13. *Loveland* cited with approval *Keybank,* in which the Tenth District did not apply equitable subrogation when the bank seeking subrogation knew of the second mortgage but failed to get a subrogation agreement, which the bank knew was required.

{¶ 36} In *Westin,* the Westins took out two small business loans, which were secured by two mortgage liens on their property. The Westins subsequently obtained two residential mortgage loans (loans 3 and 4), and they agreed to subordinate the two small business loans to loan 3. In 1998, the Westins obtained an additional mortgage on the property, which was used to pay off the two residential mortgage loans. After the Westins defaulted, Chase Manhattan Bank, the assignee of the fifth mortgage loan, brought a foreclosure action and sought first-lien priority. The Twelfth District Court of Appeals affirmed the denial of equitable subrogation. It stated: "Chase relied upon the 'incorrect and uninformed assumption' that North Side [the mortgagee for the small business loans] would subrogate its mortgage liens to Chase's new mortgage lien. Chase never verified with North Side that Chase would retain priority after paying off Loans 3 and 4. Chase was in complete control of the loan process and therefore could have protected its own interests. The mistake solely rests with Chase."

{¶ 37} Because the parties seeking equitable subrogation in *Jones, Loveland, Keybank,* and *Westin* failed to follow reasonable practices to protect their interests, we find those cases readily distinguishable from the present case.

{¶ 38} As noted by Caldwell, the Eleventh District Court of Appeals in *Miller* refused to apply equitable estoppel when the bank's agent failed to discover a preexisting mortgage lien during a title search. The Ninth District has also adopted this view. *Leppo, Inc. v. Kiefer* (Jan. 31, 2001), Summit App. Nos. 20097 and 20105, 2001 WL 81262. *Miller* and *Kiefer* are thus at odds with *Moore,* which permitted equitable subrogation under these circumstances. See, also, *First Union Natl. Bank v. Harmon,* Franklin App. No. 02AP–77, 2002–Ohio–4446, 2002 WL 1980705 (allowing equitable subrogation when title agent missed existing second mortgage during review of title abstract prior to refinancing).

{¶ 39} In our view, *Moore* presents the better approach to the circumstances before us. As stated in *Jones,* one of the purposes of employing equitable subrogation is to provide relief against mistakes. *Jones,* 61 Ohio St.2d at 102, 15 O.O.3d 132, 399 N.E.2d 1215, quoting *Canton Morris Plan Bank v. Most* (1932), 44 Ohio App. 180, 184, 184 N.E. 765. See, also, *Bridges* at ¶ 13; *Westin* at ¶ 8–9. Accordingly, the fact that a mistake occurred does not preclude the application of equitable subrogation in *all* circumstances.

{¶ 40} Herein, it is undisputed that Washington Mutual's predecessor provided a loan in the amount of $97,500 to the Aultmans. Washington Mutual satisfied the prior mortgage of Peoples Savings Bank in the amount of $62,234 with the proceeds of its loan for the express purpose of obtaining the first mortgage on the property. The mortgage was filed on August 19, 1997, six days after closing on the loan. Caldwell acknowledges that Washington Mutual's lack of awareness of her mortgage was due to a defective title search. The title report was attached as an exhibit to Caldwell's memorandum in opposition to Washington Mutual's motion for summary judgment. There are no allegations that the bank failed to obtain a title search at the appropriate time or was dilatory in filing the mortgage.

{¶ 41} Based on the record, Washington Mutual's failure to achieve first-lien position was due solely to the title agent's inadvertent failure to discover Caldwell's preexisting mortgage. Washington Mutual's negligence was a "mere mistake," and its failure to obtain first-lien position was not due to the bank's failure to follow ordinary business practices to protect its interests. The application of equitable subrogation in this instance comports with the doctrine's purpose of providing relief from mistakes.

{¶ 42} Moreover, Caldwell's position would not change as a result of subrogation. Caldwell was originally in the second-lien position, and Washington Mutual has sought subrogation only to the extent that it paid off the Peoples Savings Bank mortgage and not to the full amount of its loan. Accordingly, the substitution of Washington Mutual for Peoples Savings Bank, in the amount of $62,234, has no effect on Caldwell's original position. Although Caldwell's mortgage was executed shortly after the sale of the property and was filed days after Washington Mutual's mortgage, Caldwell's mortgage did not require the Aultmans to provide first-lien priority. Under these facts, Washington Mutual's equity is strong, and the case is clear. Based on the record before us, the trial court should have applied the doctrine of equitable subrogation, granted Washington Mutual's motion for summary judgment, and overruled Caldwell's motion for summary judgment.

{¶ 43} The first assignment of error is sustained.

{¶ 44} The judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

GRADY and DONOVAN, JJ., concur.