OPINION.
We have removed this case from the accelerated calendar. *Page 3 
 {¶ 1} In this lien-priority case, defendant-appellant Fifth Third Bank argues that the trial court improperly applied the doctrine of equitable subrogation to defeat its claim that its lien had priority under the recording statute. We agree.
 Sleeping Giants {¶ 2} Defendants James and Heather McCarthy owned a home at 5497 Foley Road in Cincinnati. The home was purchased with a mortgage loan issued by Countrywide Home Loans. A mechanic's lien was filed against the property by Pella Windows in 2004, and a second mechanic's lien was recorded by Jack Boiman Sons and Daughters on February 11, 2005.
 {¶ 3} On March 10, 2005, the McCarthys entered into a mortgage agreement with Fifth Third Bank. This mortgage related to a business loan issued to James McCarthy's business, which he personally guaranteed.
 {¶ 4} On the same day that the agreement with Fifth Third was executed, the McCarthys went to defendant Centex Home Equity Company to refinance the original mortgage loan. Centex contracted with third-party defendant-appellee Buckeye Title Agency to serve as closing agent and contracted with defendant Old Republic National Title Insurance Company to provide title insurance. As part of the agreement involving Old Republic, Buckeye was required to record the mortgage "within 24 hours from the date the loan is consummated."
 {¶ 5} On March 19, a title search revealed all the encumbrances of record on the property. Five days after the title search was conducted, the law firm of Santen and Hughes filed a certificate-of-judgment lien further encumbering the property for payment of legal services. *Page 4 
 {¶ 6} The McCarthys closed on the Centex mortgage loan on April 1, 2005. Centex was not informed that the McCarthys had already obtained a business loan from Fifth Third that would be secured by the property. The McCarthys had a right to cancel the Centex agreement that expired on April 5. Proceeds from the loan were used to satisfy the Countrywide mortgage as well as the Pella Windows and Boiman liens.
 {¶ 7} Fifth Third recorded its lien on the property on April 15. This was 36 days after its mortgage agreement had been signed. The Centex lien was recorded on May 2. This was 27 days after the expiration of the McCarthy's right to cancel and 31 days after the loan closing.
 {¶ 8} Santen and Hughes commenced a foreclosure action against the McCarthys. Other claimants, including Fifth Third and Centex, were brought into the suit. Old Republic filed a third-party complaint against Buckeye Title, claiming breach of contract for failing to record the Centex lien within 24 hours pursuant to their contract. Old Republic then reached an agreement with Santen and Hughes and was substituted as the plaintiff in its stead.
 {¶ 9} Fifth Third moved for summary judgment, claiming that its lien was entitled to priority because it was filed prior to the Centex lien. Buckeye Title filed a cross-motion for summary judgment and claimed that, while the Centex mortgage was filed later in time, it was entitled to priority consideration under the doctrine of equitable subrogation. The trial court agreed with Buckeye Title, granting summary judgment in its favor and denying the motion filed by Fifth Third. The trial court ruled that the Santen and Hughes lien had first priority, the Centex mortgage had second priority, and the Fifth Third mortgage had third priority. *Page 5 
 Equitable Subrogation Does Not Apply {¶ 10} In one assignment of error, Fifth Third argues that the trial court improperly applied the doctrine of equitable subrogation to defeat its claim that its lien had priority over the later-recorded Centex lien. We agree.
 {¶ 11} Under Ohio law, lien priority is determined by the time of filing.[1] The recording statute sets forth the general rule that "the first [mortgage] recorded shall have preference" over subsequently recorded mortgages.[2]
 {¶ 12} The Ohio Supreme Court has crafted a limited exception to this rule in the doctrine of equitable subrogation. In its modern manifestation, equitable subrogation "arises by operation of law when one having a liability or right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid."[3] To claim equitable subrogation, a party's equity must be strong and his case clear.[4] The right to it depends upon the facts and circumstances of each particular case.[5]
 {¶ 13} Many courts have held that equitable subrogation cannot be used to benefit parties who are negligent in their business transactions, and who are in the best position to protect their own interests.[6] Even courts that have held that negligence does not necessarily bar such a claim have concluded that the doctrine *Page 6 
does not apply when the party "has failed to act in conformity with ordinary and reasonable practices to establish their first priority."[7]
 {¶ 14} The majority of Buckeye Title's argument centers not on its actions, but on the conduct of Fifth Third Bank. It argues that Fifth Third delayed longer than Centex did, and that it conducted no title search prior to granting its mortgage loan to the McCarthys. This argument is misplaced. Fifth Third was not seeking to apply a principle of equity to circumvent the statutory recording scheme. Buckeye Title was. Under these circumstances, Buckeye Title was required to demonstrate that it had acted "in conformity with ordinary and reasonable practices to establish their first priority." It failed to do so.
 {¶ 15} The only evidence in the record regarding ordinary and reasonable business practices is the contract between Buckeye Title and Old Republic that required Buckeye Title to record the lien "within 24 hours from the date the loan is consummated." Further, Buckeye Title chose to present no evidence demonstrating that a longer period would have been within the standard of "ordinary and reasonable business practices." In fact, counsel at argument conceded that the filing could have occurred sooner.
 {¶ 16} There may be times when the doctrine of equitable subrogation may apply. If filing were delayed through some circumstance beyond the control of the parties — such as an automobile accident on the way to the recorder's office or an act of God — the doctrine would properly apply. But here Centex "controlled the disbursement of the funds, the filling out of all the forms, the date of the filing and even the hiring of the title company."[8] For reasons the parties chose not to make *Page 7 
clear, the Centex lien was not filed until at least 27 days after the loan had been consummated — well after the 24 hours contemplated by the contract between Buckeye Title and Old Republic.
 {¶ 17} Accordingly, we sustain Fifth Third's sole assignment of error. The summary judgment entered by the trial court for Buckeye Title is reversed. Lien priority in this case is hereby established as follows: the Santen and Hughes lien has first priority, the Fifth Third mortgage has second priority, and the Centex mortgage has third priority. This case is remanded to the trial court for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
[1] R.C. 5301.23.
[2] See Natl. City Bank v. Gumm, 1st Dist. No. C-030600,2004-Ohio-1263, at ¶ 9.
[3] State v. Jones (1980), 61 Ohio St.2d 99, 102, 399 N.E.2d 1215, quoting Federal Union Life Ins. Co. v. Deitsch (1934), 127 Ohio St. 505,510, 189 N.E. 440.
[4] Id., citing Harshman v. Harshman (1941), 35 Ohio Law Abs. 633, 636, 42 N.E.2d 447.
[5] Id.
[6] See Assocs. Fin. Servs. Corp. v. Miller, 11th Dist. No. 2001-P-0046, 2002-Ohio-1610; Wells Fargo Bank, N.A. v. Dupler, 5th Dist. No. 06 CA 26, 2007-Ohio-3497, at ¶ 30; Fifth Third Bank v. Lorance, 12th Dist. No. CA2006-10-280, 2007-Ohio-4217, at ¶ 19; Leppo, Inc. v.Kiefer (Jan. 31, 2001), 9th Dist. Nos. 20097 and 20105; Wash. Mut. Bankv. Loveland, 10th Dist. No. 04AP-920, 2005-Ohio-1542, at ¶ 13.
[7] Wash. Mut. Bank, FA v. Aultman, 172 Ohio App.3d 584,2007-Ohio-3706, 876 N.E.2d 617, at ¶ 34.
[8] Jones at 103, 399 N.E.2d 1215.
 CUNNINGHAM, J., concurs. PAINTER, P.J., concurs separately.