[Cite as *Allstate Ins. Co. v. Smeltzer*, 2011-Ohio-2632.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

ALLSTATE INSURANCE CO.

    Appellant

    v.

ROBERT SMELTZER, et al.

    Appellees

C.A. No.    25136

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2007-06-4107

DECISION AND JOURNAL ENTRY

Dated: June 1, 2011

---

BELFANCE, Presiding Judge.

{¶1} Appellant, Allstate Insurance Company, appeals the order of the Summit County Court of Common Pleas that granted summary judgment to Appellees, Robert and Mary Smeltzer. Because the trial court did not properly determine a threshold question in the course of deciding that the Smeltzers are entitled to judgment as a matter of law, this Court reverses and remands the case for consideration of the Smeltzers' counterclaim.

{¶2} Mary Smeltzer was injured in an automobile accident on February 20, 2002, while a passenger in a car operated by her husband, Robert Smeltzer. The Smeltzers were insured by Allstate. Three lawsuits followed. In the first, a jury determined that Mr. Smeltzer and two other drivers were each one-third at fault for the accident and entered judgment against each, jointly and severally. Cargo Transporters, which employed one of the tortfeasors, satisfied the judgment. In the second lawsuit, Cargo Transporters sought contribution from Mr. Smeltzer who, in turn, sought coverage from Allstate for the contribution claim.

{¶3} In the third lawsuit, which is at issue in this appeal, Allstate sought a declaratory judgment that it did not have an obligation to provide indemnification and defense for the contribution claim under the Smeltzers' liability coverage. The Smeltzers counterclaimed, requesting a declaration that Allstate had "the contractual obligation to indemnify Mr. Smeltzer for the damages to his wife pursuant to the terms of the underinsured/uninsured motorist benefits of their policy."

{¶4} Allstate and the Smeltzers filed cross motions for summary judgment. Allstate argued, in part, that Mr. Smeltzer was excluded from liability coverage under a household member exclusion that provided that "Allstate will not pay for any damages an insured person is legally obligated to pay because of * * * bodily injury to any person related to an insured person by blood, marriage or adoption and residing in that person's household." It also argued that *Mrs. Smeltzer* was not entitled to UM coverage. Specifically, Allstate argued that the automobile that Mr. Smeltzer was driving at the time of the accident was not an "uninsured auto" because it was "a motor vehicle * * * insured for bodily injury liability under the Automobile Liability Insurance of [the Smeltzers'] policy."

{¶5} In their motion for summary judgment, the Smeltzers' argued that the uninsured motorist coverage applied not on the theory that Mr. Smeltzer was entitled to indemnification under the uninsured motorist coverage for what he paid to Cargo Transporters, but under the theory that Mrs. Smeltzer had not been made whole:

> "On March 7, 2008, Judge Mary Spicer, the Judge for the contribution [a]ction, entered a Judgment Order holding that Robert Smeltzer was liable for $36,921.25 to Cargo Transporters. As a result, the Smeltzers have been forced to take out a loan on their home to satisfy this judgment, incurring not only the principle amount, but also the accrual of interest and bank fees. Prior to this satisfaction, Robert Smeltzer was forced to go through the public humiliation of wage-garnishment hearing as well. Because Mary has borne out these expenses with

her husband, in no way has she been made whole as to the judgment she obtained for her injuries."

The Smeltzers extended this argument to Mr. Smeltzer under a theory of subrogation, arguing that "[b]ecause Cargo Transporters, and ultimately Robert Smeltzer, paid Mary's damages as determined by the original lawsuit, they are now subrogated to any benefits Mary might receive through her UM/UIM policy."

{¶6} The trial court granted summary judgment to Allstate on its claim regarding the applicability of the liability insurance provisions of the insurance policy. With respect to the Smeltzers' counterclaim regarding uninsured motorist coverage, the trial court granted summary judgment to the Smeltzers and declared that "Defendant Mary Smeltzer is entitled to uninsured motorist coverage under the insurance policy and Plaintiff Allstate Insurance Company is obligated to provide said coverage." The trial court based its decision on its conclusion that the exclusion from uninsured motorist coverage upon which Allstate relied was invalid.

{¶7} On appeal, Allstate has argued that the trial court erred by determining that Mrs. Smeltzer was entitled to uninsured motorist coverage for Cargo Transporters' contribution claim because the trial court applied the wrong law to its analysis of the uninsured motorist coverage exclusion. We do not reach the merits of this argument, however, because the trial court failed to address the crucial threshold issue in this case: whether, under any of the theories argued by the Smeltzers, the judgment in the contribution case falls within the scope of the uninsured motorist coverage in the first place.[1]

---

[1] We note that the Smeltzers did not amend their counterclaim to request a declaratory judgment under any additional theory beyond Mr. Smeltzer's claim of indemnification.

{¶8} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105. According to Civ.R. 56(C), summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

{¶9} Exclusions to insurance coverage are only relevant to the extent that coverage exists in the first place. For that reason, the threshold question in an uninsured motorist case is whether the terms of the coverage apply on their face to the claim at issue. This is a significant question in this case because it is not clear that uninsured motorist coverage applies to the Smeltzers' counterclaim as there are several key terms that are not defined in the policy.

{¶10} It is clear that the Smeltzers want Allstate to pay them for the judgment that Mr. Smeltzer paid to Cargo Transporters in the contribution case. Their theory of how they are entitled to uninsured motorist coverage is less clear. The Smeltzers did not seek a declaration that there is uninsured motorist coverage for Mrs. Smeltzer's physical injuries. In fact, the parties agree that Mrs. Smeltzer's judgment against the tortfeasors was satisfied in full by Cargo Transporters. In their counterclaim for declaratory judgment, the Smeltzers requested a declaration that Mr. Smeltzer was entitled to indemnification from Allstate for the payment to Cargo Transporters. In their later filings, however, they argued that Mrs. Smeltzer bore this financial loss and that Mr. Smeltzer was subrogated to her right of recovery under the uninisured motorist coverage.

{¶11} In this respect, we note that indemnification and subrogation are "distinctly different concepts[.]" See, generally, *Essad v. Cincinnati Cas. Co./The Cincinnati Ins. Cos*, 7th Dist. No. 00 CA 207, 2002-Ohio-1947, at ¶11. "Indemnification occurs when one who is primarily liable is required to reimburse another who has discharged a liability for which that

other is only secondarily liable." *Krasny-Kaplan Corp. v. Flo-Tork, Inc.* (1993), 66 Ohio St.3d 75, 78. By implication, then, Mr. Smeltzer's request for declaratory judgment urged the trial court to find that it was Allstate that was primarily liable for payment of the contribution claim and that Mr. Smeltzer was only secondarily so. See id.

{¶12} While indemnification involves reimbursement of the party who paid a liability by virtue of their contractual relationship, see id., subrogation allows one party to stand in the place of another to succeed to that person's legal rights. See *State, Dept. of Taxation v. Jones* (1980), 61 Ohio St.2d 99, 101. Conventional subrogation arises out of a contractual relationship between the parties in question. *Midland Title Sec., Inc. v. Carlson*, 171 Ohio App.3d 678, 2007-Ohio-1980, at ¶17. Equitable subrogation, however, does not arise by contract, but by virtue of the relationship between the parties. *American Ins. Co. v. Ohio Bur. of Workers Comp.* (1991), 62 Ohio App.3d 921, 924. It is "'essentially a theory of unjust enrichment' * * * [that] shifts a loss from one merely secondarily liable on a debt to one more primarily liable on the debt who in equity should have paid it in the first instance." Id., quoting *Ridge Tool Co. v. Silva* (1986), 33 Ohio App.3d 260, 261. Because the focus of Mr. Smeltzer's arguments regarding subrogation is his wife, with whom he does not have a contractual right of subrogation, it appears that these arguments are based on equitable subrogation. "In order to be entitled to equitable subrogation, 'the equity must be strong and the case clear.'" *Washington Mut. Bank, FA v. Aultman*, 172 Ohio App.3d 584, 2007-Ohio-3706, at ¶24, quoting *Jones*, 61 Ohio St.2d at 102.

{¶13} We reiterate that the Smeltzers' counterclaim as pleaded requested a declaration that Mr. Smeltzer was entitled to payment under the uninsured motorists portion of their policy on a theory of *indemnification* alone. In any event, the threshold legal issue in this case is whether the uninsured motorist coverage is implicated. If the uninsured motorist coverage is not

implicated in the first place, any discussion of the exclusions from coverage that may arise thereunder is unnecessary and premature.

{¶14} The trial court, however, did not consider the applicability of uninsured motorist coverage in the first instance. According to the policy of insurance that is in the record before this Court, uninsured motorists coverage applies to "damages which an insured person * * * is legally entitled to recover from the owner or operator of an uninsured auto * * * because of bodily injury sustained by an insured person[.]" The November 2, 2001, endorsement contains the same language. Neither the general definition section of the policy nor the definition section specific to uninsured motorist coverage defines "damages."

{¶15} This Court has refused to consider a matter for the first time on appeal when the trial court did not "consider alternate grounds in support of a motion for summary judgment[]" or "failed to consider the evidence within the proper legal context." *Guappone v. Enviro-Cote, Inc.*, 9th Dist. No. 24718, 2009-Ohio-5540, at ¶12, citing *B.F. Goodrich Co. v. Commercial Union Ins.*, 9th Dist. No. 20936, 2002-Ohio-5033. Because the trial court has yet to address the threshold issue in determining whether the Smeltzers were entitled to judgment as a matter of law, this appeal fits squarely within that framework. Accordingly, this Court declines to address the merits of Allstate's argument regarding the applicability of S.B. 97 as these arguments related to the exclusions to coverage. Nonetheless, we conclude that the trial court erred by determining that the Smeltzers were entitled to judgment on their counterclaim for declaratory judgment as a matter of law because it did so without determining the threshold issue of whether the counterclaim falls within the scope of the uninsured motorists coverage at issue. Although a similar analysis could be employed with respect to Allstate's complaint for declaratory judgment under the liability portions of the policy, we note that the Smeltzers have not appealed the trial

court's order to the extent that it granted Allstate's motion for summary judgment. In fact, the Smeltzers characterized uninsured motorist coverage as the "one material issue in the case[.]" As such, liability coverage is beyond the scope of this opinion.

{¶16} Allstate's assignment of error is sustained. The order of the trial court that granted summary judgment to the Smeltzers on their counterclaim is reversed. This Court remands the matter to the trial court for further proceedings consistent with this opinion. Specifically, the matter is remanded for proceedings necessary to determine whether the contribution sought by Cargo Transporters from Mr. Smeltzer falls within the scope of uninsured motorists coverage.

Judgment reversed
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appelles.

_____

EVE V. BELFANCE
FOR THE COURT

CARR, J.
CONCURS

WHITMORE, J.
CONCURS, IN PART, AND DISSENTS, IN PART, SAYING:

{¶17}  Although I concur in the majority's opinion to the extent that it reverses the trial court's judgment in favor of the Smeltzers, I dissent from the rest of the opinion.

{¶18}  Mrs. Smeltzer was injured in a car that fell under the definition of what "an uninsured auto is not" in the Smeltzers' uninsured motorist coverage.  Because this analysis is dispositive of the case, I would not engage in the majority's analysis.  I conclude that the endorsement provided by Allstate placed the Smeltzers on notice that the policy language had changed, and I would reverse the trial court's decision on that basis.

{¶19}  In *Advent v. Allstate Ins. Co.*, 118 Ohio St.3d 248, 2008-Ohio-2333, the Ohio Supreme Court considered whether amendments to R.C. 3937.18 contained in S.B. 97 could be incorporated into an insurance contract at a renewal period during the two-year guarantee period as permitted by S.B. 267.  The Advents carried a policy of automobile insurance dating from March 12, 1989.  The policy contained liability coverage limits of $300,000 per person and $500,000 per occurrence, but UM coverage limits of $50,000 per person and $100,000 per occurrence.  Apart from the amendments contained in S.B. 97, therefore, UM coverage up to the general policy limits of $300,000/$500,000 would have arisen as a matter of law by application of R.C. 3937.18(A).  *Advent* at ¶9-10.

{¶20} Mrs. Advent died as the result of an automobile accident on September 28, 2002. The relevant two-year guarantee period began on March 12, 2001, six months after the effective date of S.B. 267 and seven months before the effective date of S.B. 97. The contract renewed at six-month intervals and, on March 12, 2002, just over six months before the accident, Allstate included an "Important Notice" of policy changes with the Advents' renewal. The notice informed the Advents that "[t]he coverage limits you have chosen for Uninsured Motorists Insurance for Bodily Injury are less than your limits for Bodily Injury under Automobile Liability Insurance[,]" and "the Advents were advised to contact their agent or Allstate if they wished to increase their UM limits." *Advent* at ¶16. Mr. Advent ultimately made a claim against Allstate under their own insurance policy for $200,000 "on the theory that by operation of law, the amount of UM coverage was equivalent to his policy's liability limits of $300,000, subject to an offset of the $100,000 recovered from the tortfeasor's policy." Id. at ¶4. In other words, Mr. Advent's position was that Allstate could not incorporate the S.B. 97 amendments into their insurance policy at the March 2002 policy renewal and that, under S.B. 267, UM coverage still arose in the general policy limits as a matter of law.

{¶21} The Supreme Court held that "insurers may incorporate any changes permitted or required by the Revised Code at the beginning of any policy-renewal period on or after October 31, 2001 (the effective date of S.B. 97) within the policy's two-year guarantee period that began on or after September 21, 2000 (the effective date of S.B. 267)." Id. at ¶11. Applying this conclusion to Mr. Advent's claim, the Court concluded that Allstate could incorporate changes permitted by S.B. 97 into the Advents' policy at the March 2002 policy renewal. The Court also concluded that the notices that accompanied the renewal "contained sufficient information to put the Advents on notice that the provisions regarding UM coverage in the policy had changed, that

the UM coverage was as stated on the policy declarations page, and that action on their part was necessary to modify the stated UM limits." Id. at ¶18. Accordingly, the Court determined that R.C. 3937.18 did not require higher UM coverage limits to be implied as a matter of law.

{¶22} In this case, a two-year guarantee period on the Smeltzers' policy with Allstate began on November 2, 2000, less than two months after the effective date of S.B. 267, which provided that changes in the law permitted by R.C. 3937.18 could be incorporated into an insurance policy at any renewal *during* a two-year guarantee period. A six-month renewal of the Smeltzers' policy occurred on May 2, 2001, and the amendments contained in S.B. 97 became effective on October 31, 2001. Another six-month renewal occurred on November 2, 2001, just over three months before the accident at issue. As provided by R.C. 3937.31(E), pursuant to S.B. 267, any change permitted by S.B. 97 could be incorporated into the Smeltzers' policy with Allstate at the November 2, 2001 renewal or any subsequent renewal within the two-year guarantee period. See *Advent* at ¶11.

{¶23} Allstate's November 2, 2001 renewal policy endorsement provided that "An Uninsured Auto Is Not *** a motor vehicle which is insured for bodily injury liability under the Automobile Liability Insurance of this policy." Because R.C. 3937.18, as amended by S.B. 97, provided that UM coverage could be subject to "terms and conditions that preclude coverage *** included but not limited to" those specifically stated in the statute, this was a permitted limitation to the UM coverage provided therein. According to R.C. 3937.18 and *Advent*, therefore, Allstate could incorporate this exclusion into the Smeltzers' contract of insurance at any six-month renewal, including those within the two-year guarantee period recognized by *Wolfe v. Wolfe* (2000), 88 Ohio St.3d 246.

{¶24} The November 2, 2001, policy endorsement that Allstate sent to the Smeltzers informed them that "[t]he following endorsement changes your policy" and instructed them to "read this document carefully and keep it with your policy." Underneath this statement, in bold and capital letters, is the heading "Amendment of Policy Provisions – Ohio." Along with other changes to the policy, the definition of what "an uninsured auto is not" was clearly set forth on page two of the endorsement. Adequate notice of the policy change, therefore, was given by virtue of the notice itself. Applying this conclusion to the Smeltzers' claim, it is clear that the exclusion eliminates whatever coverage they might arguably have had under the UM portion of the policy.

{¶25} For this reason, I conclude that application of the exclusion to the Smeltzers' claim is dispositive of this case, and I would reverse the trial court's judgment on that basis.

APPEARANCES:

DAVID L. LESTER, Attorney at Law, for Appellant.

HENRY W. CHAMBERLAIN, Attorney at Law, for Appellees.

PAUL W. FLOWERS, Attorney at Law, for Appellees.